A04A0602. MAYBERRY v. THE STATE.
(600 SE2d 703)

RUFFIN, Presiding Judge.

A jury found Donald Gene Mayberry guilty of aggravated assault, burglary, and obstruction. Mayberry appeals, asserting that the trial court erred in denying his motion to suppress certain custodial statements he made to the police. The trial court found that

Mayberry was not in custody when the statements were made and thus admitted the statement. For reasons that follow, we affirm.

"The issue presented, as to whether appellant was in custody for *Miranda* purposes, is a mixed question of law and fact. We will not reverse the trial court's fact findings which underpin its legal conclusion made at a suppression hearing, unless they are clearly erroneous."[1]

At the hearing on the motion to suppress, the evidence showed that on the night of October 3, 2002, Mayberry was driving himself to the hospital to treat an injury to his head. A police officer, responding to a call involving a domestic dispute and on the "look-out" for Mayberry's vehicle, pulled him over. Mayberry turned into a parking lot and was surrounded by four or five police cars. He exited his car with his hands up. He was wearing an all black outfit. One police officer handcuffed him, and Mayberry testified that the others had their guns drawn. He did not ask the officers to take him to the hospital, but "[t]he next thing" he knew an ambulance had arrived. A police officer handcuffed him to both sides of the gurney. When Mayberry arrived at the hospital and was transferred to a stretcher, the officers handcuffed him to the stretcher and used hospital restraints on his legs.

Officer Peacock arrived at the hospital to interview Mayberry and his wife, who was also at the hospital, regarding a possible "domestic violence situation." Another officer told Officer Peacock that no one was under arrest. He first went to the room of Mayberry's wife, and he observed that she had a laceration to the head. He then went to another room where he observed that Mayberry was handcuffed to a stretcher. Officer Peacock said that Mayberry was secured to the stretcher due to the way he was "physically acting."[2]

Officer Peacock told Mayberry that he needed to ask him a few questions. He did not read Mayberry his rights under *Miranda v. Arizona*.[3] Mayberry told the officer that he and his wife were having domestic problems and had been living apart. He said that he entered his wife's house that night by using a key he had duplicated and that he entered his wife's bedroom. He then climbed on top of her and shined a light in her face to scare her. At this point, she woke up and hit him in the head with an iron pipe. They wrestled, and he grabbed the iron pipe from her and in turn hit her in the head.

---

[1] (Punctuation omitted.) *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1997).

[2] Although Officer Peacock inferred that the hospital restrained Mayberry, it is evident from his testimony that he was not present when Mayberry was actually restrained and that he has no direct knowledge. Thus, we are left with Mayberry's uncontradicted testimony that he was restrained by the police.

[3] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Officer Peacock testified that he did not have probable cause to arrest Mayberry until after he questioned him and that Mayberry was not a suspect when he began questioning him. After interviewing Mayberry, however, Officer Peacock placed him under arrest.

Mayberry admitted that he was on an "adrenalin high" that night, but he denied that the medical staff had a hard time keeping him under control. He admitted that Officer Peacock simply asked him if he would tell his side of the story, and that the officer did not threaten him or place him under arrest. However, he testified that he was handcuffed to the gurney and later the stretcher and that "[i]t was obvious [he] was under arrest."

The trial court found that Officer Peacock's questioning was purely investigatory in nature, that none of the officers had placed Mayberry under arrest, and that Mayberry had not been told he was under arrest. The court also noted that hospitals restrain people to give them proper treatment and to keep them from hurting themselves. It found that Mayberry was not in custody at the time of Officer Peacock's questioning and that Officer Peacock's testimony was admissible.

At trial, Mrs. Mayberry testified that she awoke to find Mayberry in her bedroom, dressed in black. He told her that he was there to kill her, and he struck her in the head with a pipe.

Mayberry took the stand and denied hitting his wife with a pipe. He said that he and his wife were playing a sexual fantasy game. When he entered the bedroom dressed all in black as part of the game, she turned the light on and he climbed onto the bed, but then she suddenly "clocked" him in the head with a pipe. They struggled, and then he heard her run outside, pound on her neighbor's door and yell "[h]e tried to kill me."

Because this testimony contradicted Mayberry's hospital statement, the State recalled Officer Peacock to impeach Mayberry's testimony. Officer Peacock testified that Mayberry had admitted striking his wife with a pipe and shining a light in her face to scare her. He also testified that Mayberry never mentioned the alleged fantasy game during the hospital interview.

Mayberry contends that the trial court clearly erred in making the factual finding that Mayberry was not in police custody at the time he gave the statements to Officer Peacock. We agree.

> In resolving this issue, the relevant inquiry is how a reasonable person in [the] suspect's position would perceive his situation; that is, whether a reasonable person in [Mayberry's] position would have understood the situation to constitute

restraint on freedom of movement of the degree which the law associates with formal arrest.[4]

Here, Officer Peacock testified, and Mayberry admitted, that Mayberry had not been placed under arrest at the time of the questioning. However, we fail to see how a reasonable person in Mayberry's position would not have considered himself under arrest, given that initially he was surrounded by police cars, the police handcuffed him to the gurney and accompanied him in the ambulance, and later they handcuffed him to the stretcher at the hospital and restrained his legs. The record shows that the restrictions on Mayberry's freedom were not due to his status as a hospital patient, as the trial court found, but rather were instituted by the police. Accordingly, the trial court erred in finding that Mayberry's statement was made under noncustodial circumstances.[5]

However, "a trial court's ruling on a motion to suppress will be upheld if it is right for any reason."[6] Here, we find that Mayberry's statement was properly admitted for impeachment purposes.[7] While the State may not use a statement obtained in violation of a defendant's *Miranda* rights during its case-in-chief, that statement may be used on rebuttal to impeach the defendant.[8] Mayberry's statements to Officer Peacock were not introduced during the State's case-in-chief; rather, the State offered the statement to impeach Mayberry's testimony. Accordingly, Mayberry's statements were admissible, even if obtained in violation of his *Miranda* rights.[9]

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED MAY 27, 2004.

*Daniel L. Henderson*, for appellant.
*Patrick H. Head, District Attorney, H. Maddox Kilgore, Amy H. McChesney, C. Lance Cross, Assistant District Attorneys*, for appellee.

---

[4] (Citation and punctuation omitted.) *Hendrix*, supra at 605-606.
[5] See *McDougal v. State*, 277 Ga. 493 (591 SE2d 788) (2004).
[6] (Punctuation omitted.) *Hall v. State*, 258 Ga. App. 502, 503 (1) (574 SE2d 610) (2002).
[7] See *Price v. State*, 253 Ga. App. 102, 103-104 (2) (558 SE2d 73) (2001).
[8] See id.
[9] See id.