S04A0697. ROBINSON v. THE STATE.
(602 SE2d 574)

HINES, Justice.

Don Robinson appeals his convictions for felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the fatal shooting of security guard Stacy Stegall. His sole challenge is to the denial of his motion to suppress statements he made at the hospital while he was being treated for injury sustained in the shooting. Finding the challenge to be without

merit, we affirm.[1]

Construed to support the verdicts, the evidence showed that on May 26, 1998, during a fight at an adult entertainment club, Robinson fired a handgun into the lobby. Security guard Stacy Stegall was fatally wounded, and Tempest Jackson, a cashier, was shot in the arm and chest. Robinson threatened Ronnie Myers, the manager, with the pistol. Myers was able to describe the shooter's shirt as white with blue and yellow. He also identified Robinson as the shooter.

At the club, Atlanta Police Investigator R.E. Chambers learned that the shooter shot himself when he put the handgun in his back pocket. A blood trail led from the club lobby to a bloody white Adidas tennis shoe in the street. Someone was seen leaving the club in a dark Ford Explorer. Police inquiries to area hospitals revealed that Robinson had been admitted to Cobb General Hospital with a gunshot wound. A security officer saw Robinson arrive at the hospital in a dark sport utility vehicle.

Chambers interviewed hospital security and obtained Robinson's bloody clothes. The clothes included a blue and white striped shirt, shorts with a hole in the right back thigh, and brown loafers. Chambers got permission from the nurses to speak with Robinson while he was recovering from his surgery in intensive care. Robinson had reported that he was shot while walking near Peachtree and Twelfth Streets. In the interview, Chambers asked Robinson about the shooting that Robinson himself had reported. Robinson said his friends brought him to the hospital in a Lincoln Towncar. When

---

[1] The crimes occurred on May 26, 1998. On November 17, 1998, a Fulton County grand jury indicted Robinson for: Count 1 – the malice murder of Stacy Stegall; Count 2 – the felony murder of Stegall while in the commission of aggravated assault; Count 3 – the aggravated assault of Stegall; Count 4 – the aggravated assault of Tempest Jackson; Count 5 – the aggravated assault of Ronnie Myers; and Count 6 – possession of a firearm during the commission of aggravated assault. Robinson was tried before a jury October 15-22, 1999, and found guilty on all counts. On October 29, 1999, he was sentenced to life imprisonment on Count 1; fifteen years in prison on Count 4, to be served consecutively to the sentence in Count 1; five years in prison on Count 5, to be served consecutively to the sentence in Count 4; and five years in prison on Count 6, to be served consecutively to the sentence in Count 5. The trial court found that Count 3 merged for the purpose of sentencing and Count 2 stood vacated by operation of law. Robinson filed a motion for a new trial on November 19, 1999, and an amended motion for a new trial on January 31, 2002. Following a hearing, on February 7, 2002, the trial court vacated the malice murder conviction and ordered that Count 1 of the indictment be placed on the dead docket. See *Harris v. State*, 273 Ga. 608 (543 SE2d 716) (2001) (reversing a malice murder conviction because a jury charge allowed intent to be inferred from the use of a deadly weapon). The trial court denied the motion for new trial, as amended, on all other grounds. On September 13, 2002, the trial court re-sentenced Robinson to life imprisonment for felony murder in Count 2; a consecutive fifteen years in prison on Count 4; a consecutive five years in prison on Count 5; and a consecutive five years in prison on Count 6. On September 13, 2002, the trial court also entered an order granting Robinson an out-of-time appeal. Robinson filed a notice of appeal on that date. The appeal was docketed in this Court on December 30, 2003. Robinson filed an amended notice of appeal on January 8, 2004. The case was submitted for decision on February 23, 2004.

confronted with the information obtained from the hospital security officer, Robinson agreed that he could have arrived in an Explorer. Chambers then advised Robinson of his *Miranda*[2] rights. Robinson said he understood them and did not request an attorney. In response to Chambers' post-*Miranda* question, Robinson answered that he was wearing a blue and white sport shirt, blue jeans, and white Adidas tennis shoes. Chambers obtained an arrest warrant after the ten-to-fifteen minute interview.

1. The evidence was sufficient to enable a rational trier of fact to find Robinson guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Citing *Reinhardt v. State*, 263 Ga. 113 (428 SE2d 333) (1993), Robinson contends that it was error to deny his motion to suppress the pre-*Miranda* statements he made at the hospital about the vehicle in which he arrived because he was unable to leave the hospital due to his physical condition and the fact that his clothes were in police custody.

*Miranda* warnings are required when a person "is (1) formally arrested or (2) restrained to the degree associated with a formal arrest." *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001). Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. Id.

In *Reinhardt*, the defendant was convicted of felony murder and arson, and this Court held that the admission of his pre-*Miranda* statements made to police while he was being treated at a hospital was error. *Reinhardt* at 115 (3) (a). However, in that case, a doctor told the defendant that he could leave the hospital, but the police took the defendant into an isolated room for questioning and asked him to remove his pants and shoes. Id. at 114 (3) (a). The police then questioned Reinhardt specifically about the origin of the fire. This Court noted that the Supreme Court of the United States, in *Miranda*, was "particularly concerned about situations in which the defendant was questioned by police 'in a room in which [the defendant] was cut off from the outside world,' because such incommunicado interrogation in a police-dominated atmosphere can result in self-incriminating statements without full warnings of constitutional rights." *Reinhardt* at 114 (3) (a). That was hardly the situation in this case.

Robinson had not been released from medical treatment or told by medical personnel that he could leave the hospital. More significantly, he was not isolated by police for questioning, nor did Chambers ask him pre-*Miranda* questions specifically about the club

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

shooting. Chambers merely asked him about the alleged incident giving rise to his injury, that is, Robinson was asked how and where he was shot and how and why he had been transported to that particular hospital, which was farther than other hospitals from the location where Robinson alleged he had been shot. The fact that Chambers may have already suspected Robinson of being the shooter at the club did not render the statements at issue violative of *Miranda*. As long as a person is not in custody, it is irrelevant to the *Miranda* analysis that investigators "(1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge them with an offense." *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

Robinson further maintains that Chambers placed him in custody before he made the statements about the vehicle in which he arrived because Chambers told him and his friends that he was under arrest and could not leave. However, the record reveals otherwise. Robinson did not testify at the hearing on the motion to suppress. Chambers' uncontradicted testimony at the hearing was that when Robinson made his initial statements about his arrival, he was not in police custody but was free to leave as far as law enforcement was concerned. Chambers also testified without contradiction that he told Robinson's friends waiting at the hospital that Robinson was under arrest only after he telephoned for an arrest warrant.

The evidence supports the finding that Robinson was not in custody for the purposes of *Miranda* at the time he made the statements about his arrival at the hospital. *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000). Consequently, it was not error to refuse to suppress the statements on the basis urged.[3]

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 2004.

*Sharon L. Hopkins*, for appellant.

---

[3] In argument, Robinson mentions that he did not wish to speak to Chambers at the hospital. However, this is solely in the context of his challenge under *Reinhardt* to admission of the pre-*Miranda* statements. Moreover, Chambers' testimony at the hearing on the motion to suppress regarding Robinson's willingness to speak with him at the hospital was uncontradicted. It was only at the hearing on the motion for new trial that Robinson testified that he told Chambers that he did not want to talk to him. In conclusion, Robinson also states that the information obtained prior to the *Miranda* warnings violated his rights to counsel and against self-incrimination under the Federal and State Constitutions. But here again, the only argument in support of such contentions is that under *Reinhardt* Robinson was in custody at the time of the statements, which this Court has determined was not the case.

Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Raina Nadler, Assistant Attorney General, for appellee.