A05A0936. MOYER v. THE STATE.
(620 SE2d 837)

BARNES, Judge.

A jury convicted Marvin Moyer of four counts of aggravated assault and one count of burglary. He appeals on several bases: (1) that the evidence was insufficient to support any of his convictions; (2) that the court erred in denying the suppression of statements he made to two police officers prior to being arrested; (3) that the court erred in denying the suppression of his custodial statement; and (4) that his trial counsel was ineffective. For the following reasons, we affirm the trial court.

The evidence establishes that Moyer and Elijah Keith Smith carried out two home invasions on the same evening. Smith was the primary aggressor in both crimes, and carried a handgun. Moyer admitted to carrying a night stick in both crimes.

There were three people in the first apartment they invaded: the tenant, his girlfriend, and a guest. The girlfriend answered the door, and Smith pushed his way into the apartment. Smith demanded that the victims tell him where "Veno" was, threatened the victims, and fired multiple shots into the floor, windows, and the door of an unoccupied bedroom. Moyer entered the apartment and remained by the front door with the night stick in his hands. Smith ordered Moyer to watch the victims. The three victims remained in the living room while Smith moved around the apartment. Moyer told the victims to give Smith what he wanted because Smith was crazy. The tenant testified that he was frightened of both of his assailants, and that his girlfriend was upset and crying during the home invasion. He also testified that Moyer went into the kitchen and ripped the phone off

the wall before he and Smith left. The girlfriend and the guest could not be located to testify.

Moyer and Smith then invaded a second apartment. As with the first invasion, Smith knocked on the door and the two men forced their way into the apartment when a victim opened the door. Moyer entered the apartment, and told the two victims to "give it up." Smith shot one of the victims three times, who yet managed to get away, retrieve his own handgun, and fatally shoot Smith.

During this struggle, the second victim tackled Moyer, and the two grappled. Moyer again told the second victim to "give it up if you want to live." That victim pulled money out of his pocket and offered it to Moyer, who did not take it. The second victim was hit by a bullet fired by Smith or the first victim, and fell to the ground. Moyer stood over him with the night stick in his hands, which the first victim mistook for a rifle, and the first victim shot Moyer. He shot Moyer again when Moyer attempted to get up. Both victims testified that they were afraid of both assailants. When the two victims left the room to call the police, Moyer broke the patio door glass and fled.

Moyer left the apartment complex, and was driven to a hospital by a Good Samaritan who alerted the police that a man had been shot. An Atlanta police officer was dispatched to the hospital, where the Samaritan identified Moyer as the gunshot victim. Moyer was sitting on a gurney in a busy area of the emergency room; he had been through triage and was awaiting treatment for gunshot wounds to both hands.

The Atlanta officer asked Moyer what had happened to him. Moyer replied that he and a friend had been drinking and ran out of money, and then his friend had pulled a gun and said, "We can rob somebody to get the money." The Atlanta officer determined that the shooting had occurred in DeKalb County, and called for a DeKalb officer. Before the DeKalb officer arrived, Moyer attempted to leave the hospital, but the Atlanta officer held him down and handcuffed him to the gurney.

When the DeKalb officer arrived, Moyer was still handcuffed. The officer testified that the Atlanta officer did not give him any information about Moyer before he began questioning him. The DeKalb officer asked Moyer for his name and what had happened. Moyer told the DeKalb officer that he and a friend had gone into an apartment complex to rob somebody for drinking money. Moyer was arrested and remained in the hospital for two days.

Two days later Moyer waived his *Miranda* rights and gave a custodial statement. The 90-minute videotaped statement was shown at trial. Moyer's hands were bandaged and he had taken pain medication that morning; however, he appeared awake, alert, and

responsive to questions. In his statement, Moyer described his involvement in both home invasions. He admitted entering both apartments while carrying a night stick.

Moyer first contends that insufficient evidence supports any of his five convictions. He contends that insufficient evidence established his intent to commit armed robbery, the underlying offense in his burglary conviction. Moyer also contends that the trial court erred in denying his motion for a directed verdict as to his four counts of aggravated assault.

On appeal from a criminal conviction, the appellant is no longer presumed innocent, and the appellate court does not weigh the evidence or determine witness credibility. *Kemp v. State*, 257 Ga. App. 340 (1) (571 SE2d 412) (2002). Viewed in the light most favorable to the verdict, the evidence is sufficient to uphold a conviction if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Here, the evidence was sufficient to sustain Moyer's burglary conviction for the second home invasion. Moyer argues that the State failed to prove all the elements of burglary, specifically the intent to commit the underlying offense of armed robbery. Moyer fails to cite any authority to support his argument, and relies solely on the fact that he did not attempt to take anything from the victims in the second apartment. However, evidence that Moyer aided or abetted Smith is sufficient to uphold Moyer's convictions as a party to Smith's crimes. OCGA § 16-2-20.

Here, there is sufficient evidence that Moyer was a party to a burglary in the second apartment. The jury was charged on parties to a crime, which allows an individual to be convicted as a party to a crime if he either (1) is present and assists in the commission of the crime, or (2) shares in the criminal intent of the actual perpetrator. *Grace v. State*, 262 Ga. 746, 748 (4) (425 SE2d 865) (1993). An individual may be convicted of burglary regardless of whether the charged underlying felony is completed. *Ricks v. State*, 178 Ga. App. 98, 101 (4) (341 SE2d 895) (1986) (burglary complete when a "person enters the dwelling house of another without authority and with intent to commit a felony . . . therein, regardless of whether or not he accomplishes his apparent purpose") (citations omitted).

In this case, Moyer's statements establish that Smith, at least, intended to commit the underlying offense of armed robbery. The State presented uncontroverted testimony that Moyer stated that Smith said, "Let's go rob someone," and that Smith had shown Moyer his handgun. Further, the evidence is sufficient to support a finding that Moyer was present and assisted in the armed robbery. Moyer and Smith entered the second home without authority, and Moyer told a

victim to "give it up if you want to live." The evidence was sufficient for a rational trier of fact to find Moyer to be a party to and guilty of burglary beyond a reasonable doubt.

2. Moyer also argues that the trial court erred in denying his motion for a directed verdict on his four counts of aggravated assault because the evidence was insufficient. A motion for a directed verdict is only granted where the evidence is without conflicts and the evidence and all reasonable inferences therefrom demand an acquittal as a matter of law. OCGA § 17-9-1; *Millirons v. State*, 268 Ga. App. 644, 645 (1) (602 SE2d 346) (2004).

An assault is either an attempt to harm another, or an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20. An aggravated assault occurs when a person assaults another with "any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). We find the evidence sufficient to support the four counts.

(a) The first two convictions were for aggravated assault against two victims in the first apartment. The evidence shows that Moyer entered the apartment, held a night stick while standing by the door, and instructed the victims to cooperate with Smith. The first victim testified that he was afraid of Moyer, and that the second victim was crying and appeared frightened of Moyer and Smith.

Moyer argues on appeal that he was under coercion to help Smith, and that his instructions to the victims were pleas for them to cooperate for their own safety. This argument is inapposite. The jury weighs the evidence, judges witness credibility, and draws reasonable inferences from the evidence; an appellate court does not substitute its judgment for that of the jury on these matters. See, e.g., *Millirons*, 268 Ga. App. at 645.

A rational trier of fact could reasonably conclude from the evidence that Moyer was a willing participant who blocked the door while menacing the victims with the night stick. There is evidence to show that this act put both victims in reasonable apprehension of receiving a violent injury. See *Meadows v. State*, 264 Ga. App. 160, 163 (2) (590 SE2d 173) (2003) (evidence in aggravated assault conviction was sufficient and victim testimony not required where other testimony showed that victim was crying and appeared frightened). Thus, a rational trier of fact could have found Moyer guilty of aggravated assault with a night stick against the two victims in the first apartment. *Jackson v. Virginia*, supra, 443 U. S. 307. Accordingly, the trial court did not err in denying Moyer's motion for a directed verdict as to the first two counts of aggravated assault.

(b) Moyer was also convicted for aggravated assault against the two victims in the second home invasion. The evidence shows that

Moyer and Smith entered the second apartment, where Smith began demanding money and started shooting at the first victim. The second victim testified that he tackled Moyer when the shooting started, and that the two struggled. He testified that his chest was bruised by what he believed was a wooden gun handle. Moyer told the second victim to give it up if he wanted to live, and the victim testified that he was afraid of Moyer. Finally, Moyer admitted to having a wooden night stick during the commission of the crime. Accordingly, there is sufficient evidence for a rational trier of fact to find Moyer guilty of aggravated assault beyond a reasonable doubt on the second victim, and the trial court did not err in denying Moyer's motion for a directed verdict as to the third count of aggravated assault.

(c) The evidence is also sufficient to support Moyer's conviction for aggravated assault against the first victim in the second home invasion. After the victim shot Smith, he saw Moyer standing over the second victim with what he thought was a shotgun. When Moyer turned toward him, the first victim shot Moyer. He approached Moyer, and shot him again when Moyer attempted to get up. The two victims then left to call the police, at which point Moyer left the apartment. The first victim also testified that he was afraid of Moyer. This evidence is sufficient under the standard of *Jackson v. Virginia*, supra, 443 U. S. 307.

3. Moyer argues that the court erred in denying his motion to suppress the statements he made to the two police officers at the hospital emergency room. After a *Jackson-Denno* hearing, see *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the court denied Moyer's pretrial motion to suppress these statements. Moyer contends that his statements should have been suppressed because they were made as a result of an improper custodial interrogation and before *Miranda* warnings were given. He also argues that any statements he made to the officers were inadmissible as based on an illegal arrest without sufficient probable cause. We disagree as to the statements made to the first officer. We agree as to the failure to warn before the statement to the second officer, but find the error harmless.

Under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), persons taken into custody or otherwise deprived of their freedom of action in any significant way cannot be interrogated without being advised of their rights. Id. at 444. Thus, *Miranda* warnings are required when a person is either "(1) formally arrested or (2) restrained to the degree associated with a formal arrest." (Citations omitted.) *Tolliver v. State*, 273 Ga. 785, 786 (546 SE2d 525) (2001). If a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are required. Id. The court will closely examine any situation where the police isolate a

suspect for interrogation, or where the police physically restrain or prevent him from avoiding questioning. See *Reinhardt v. State,* 263 Ga. 113, 114 (3) (428 SE2d 333) (1993).

(a) Moyer was not given *Miranda* warnings before or during his questioning at the hospital. He was awaiting treatment for gunshot injuries to his hands when the Atlanta officer arrived at the hospital. Moyer was on a gurney in the hallway of the emergency room. The officer did not know who Moyer was, and did not believe him to be a suspect before questioning him. The Atlanta officer's testimony at the suppression hearing established that the officer did not isolate or restrain Moyer in any way before questioning him; the officer merely asked Moyer about how he had received his injuries. Moyer replied[1] that his friend had said they could rob someone for money, and that his friend was killed and he was shot.

The trial court held that the first officer to question Moyer at the hospital was not required to give Moyer *Miranda* warnings because Moyer was not in custody under these facts. We agree. The facts of this case are similar to those in *Robinson v. State,* 278 Ga. 299, 301 (602 SE2d 574) (2004). In *Robinson,* the Supreme Court of Georgia held that police questioning of a patient in a hospital did not violate *Miranda* because (1) the questions were limited to how and where the patient was injured and subsequently transported to the hospital, (2) the patient was not isolated for questioning, and (3) the patient was admitted to the hospital and had not been released from treatment. Id.

Here, Moyer was not restrained. He was not in an isolated part of the hospital when the officer arrived, and the officer did not attempt to move him. Moyer was not yet admitted to the hospital, but his injuries had been triaged and he was awaiting emergency treatment. Finally, the officer asked Moyer only general questions about his injuries. Moyer was not in custody when he responded to the first officer's questions, and the trial court did not err in admitting the testimony of the first officer.

(b) Moyer argues that his statements to the DeKalb officer were given while he was in custody and without the required *Miranda* warnings. We agree. Moyer was handcuffed when the DeKalb officer arrived, and remained in handcuffs while the DeKalb officer questioned him. The trial court admitted the DeKalb officer's testimony,

---

[1] While Moyer argues that his subsequent custodial statement was not voluntary due to the effects of pain medication, he does not contend that his statements made at the hospital were involuntary.

reasoning that the questioning was not custodial because the DeKalb officer believed Moyer to be a victim when he began his questioning. We disagree.

The subjective beliefs of law enforcement officers are not controlling for purposes of *Miranda* warnings. See *Tolliver*, supra, 273 Ga. at 786. The correct inquiry is whether a reasonable person in the defendant's situation would perceive that he was in custody. Id. When Moyer attempted to leave the hospital, the Atlanta officer held him down and handcuffed him to the gurney. Moyer remained handcuffed until the DeKalb officer arrived and questioned him. Moyer was clearly "restrained to the degree associated with a formal arrest," and a reasonable person in Moyer's situation would perceive that he was in custody. Thus, the DeKalb officer should have given *Miranda* warnings and the trial court erred in denying Moyer's motion to suppress the statements he made to the DeKalb officer.

However, this error was harmless because the DeKalb officer's testimony was merely cumulative of the Atlanta officer's testimony. The Atlanta officer testified that Moyer stated that Smith had said, "We can rob somebody," when Moyer asked him how they could get some money. The DeKalb officer testified that Moyer stated that Smith had said, "Let's go rob somebody." These were the only inculpatory statements about which the officers testified. We conclude that the DeKalb officer's testimony was inadmissible, but cumulative to the Atlanta officer's, and therefore admitting the DeKalb officer's testimony was harmless error. *Scott v. State*, 206 Ga. App. 23, 26 (1) (c) (424 SE2d 328) (1992).

4. Moyer argues that the court erred in admitting his post-*Miranda* custodial statement on the ground that it was not voluntarily given. Moyer contends that his statement was not voluntary primarily because he was on pain medication at the time of the statement. We disagree.

A post-*Miranda* custodial statement is admissible if, under the totality of the circumstances, the defendant's waiver of rights was knowing and voluntary. *Reinhardt v. State*, supra, 263 Ga. at 115 (3) (b). The totality of the circumstances is determined by considering the following nine factors:

> 1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge and the nature of his right to consult an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends[,] or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used [for] interrogation; 7) length of interrogation; 8) whether or not the accused

refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extrajudicial statement at a later date.

(Citation omitted.) Id.

The evidence adduced at the *Jackson-Denno* hearing shows the following: Moyer was thirty-six years old; he gave a videotaped statement which showed that he read and understood his *Miranda* rights and that he voluntarily waived those rights; he gave the statement two days after the home invasions while in custody; and he understood and was responsive to questions during the ninety minute interview. Moyer does not contend that the interrogation method or length was improper; he argues that his waiver was not voluntary because he was under the influence of pain medication when interrogated, and because no one explained the seriousness of the charges to him.

The fact that Moyer had pain medication in his system when he gave his statement does not negate his ability to give a voluntary statement. See *LaRue v. State*, 171 Ga. App. 371, 372 (319 SE2d 468) (1984) (post-*Miranda* statement while on pain medication was voluntary where given 12 hours after surgery and the accused appeared rational).

We will not disturb a trial court's findings as to factual determinations and witness credibility in a *Jackson-Denno* hearing unless they are clearly erroneous. *LaRue v. State*, supra, 171 Ga. App. at 372. The trial court reviewed the taped statement, and found by a preponderance of the evidence that Moyer appeared coherent, and that the statement was freely and voluntarily given. Therefore, the trial court's determination that Moyer's statement was voluntary is not clearly erroneous.

5. In his final enumeration of error, Moyer argues that his counsel was ineffective for (a) failing to file a written request to charge on the lesser included offenses of simple assault and criminal trespass; (b) failing to subpoena medical records or seek expert testimony regarding the voluntariness of Moyer's post-*Miranda* custodial statement; and (c) failing to file a demurrer to the indictments.

The two-prong test for ineffective counsel is set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The burden is on Moyer to show both that counsel's performance was deficient, and that a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. The failure to meet either prong of the test will result in the denial of the ineffectiveness claim. *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992). On appeal, we will affirm a trial court's

finding that a defendant has not been denied effective assistance of trial counsel unless that finding is clearly erroneous. Id.

(a) Moyer's trial counsel was not ineffective for failing to file a written request to charge a lesser included offense. Counsel orally requested the charge, which the trial court denied because Moyer was proceeding with an affirmative coercion defense. An affirmative defense admits the acts charged, but seeks to justify, mitigate, or excuse the acts. *Chandle v. State*, 230 Ga. 574, 576 (3) (198 SE2d 289) (1973). Moyer's trial strategy of an all-or-nothing affirmative defense which precluded charges on lesser included offenses cannot be the basis for a claim of ineffective counsel. See *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002) (trial counsel strategic and tactical decisions cannot support claims of ineffective assistance).

(b) Moyer also contends that trial counsel's performance was deficient in failing to subpoena his medical records or in seeking expert testimony regarding the voluntariness of his post-*Miranda* custodial statement. In its order denying a new trial, the trial court stated that it had reviewed Moyer's medical records, and that the records would not have altered the court's determination that the videotaped statement was voluntary and admissible. As previously noted, the fact that Moyer was on pain medication when he gave his statement does not preclude a finding that the statement was voluntary. See *LaRue v. State*, supra, 171 Ga. App. at 372. Moyer has not made the requisite showing that his counsel's failure to subpoena his medical records would have altered his trial's outcome, or even the suppression hearing's outcome.

(c) Moyer also argues that his trial counsel was ineffective for failing to file demurrers to his indictments. Moyer, however, failed to raise this allegation about his burglary indictment in his motion for a new trial. He thus has waived the issue as to that indictment. *Debaeke v. State*, 270 Ga. App. 169, 170 (1) (605 SE2d 882) (2004). Moyer further complains that his trial counsel was ineffective for failing to file a special demurrer to the four counts of aggravated assault, an argument he also did not raise in his motion for a new trial. Moyer argues that the indictment was deficient in that it did not allege the manner in which he used the night stick or baton, and he appears to argue that he was harmed because the judge instructed the jury on both methods of committing an assault, while the indictment did not specify a method. This argument is meritless.

Moyer was indicted for aggravated assault against four victims. Each indictment charged that he "did make an assault on the person of [a victim] with a baton, an object when used offensively against said person, was likely to result in serious bodily injury." We have previously held that an indictment for aggravated assault using such language sufficiently "charges an assault by way of either manner

contained in the simple assault statute." (Punctuation and footnote omitted.) *Merneigh v. State*, 242 Ga. App. 735, 736-737 (1) (531 SE2d 152) (2000). Therefore, Moyer's argument that the indictment language was not sufficient to allege a method in which he committed an aggravated assault is groundless. Moyer's trial counsel cannot be found ineffective for failing to file a meritless demurrer. See *Banks v. State*, 244 Ga. App. 191, 192 (1) (c) (535 SE2d 22) (2000) (failure to pursue meritless motion not evidence of ineffective counsel). We conclude that the trial court did not err in determining that Moyer's counsel was not ineffective.

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED SEPTEMBER 2, 2005 — ■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■

*Caprice R. Jenerson*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Elisabeth G. Mac-Namara, Leonora Grant, Assistant District Attorneys*, for appellee.