## S07A1517. JENNINGS v. THE STATE.
### (653 SE2d 17)

CARLEY, Justice.

On the morning of April 11, 2003, James W. Jennings told several people that he believed that he killed his girlfriend, Mary Elizabeth Treadwell, by beating and choking her. His brother took him to a hospital emergency room where he was treated for a drug overdose and minor injuries. Jennings told hospital personnel that he dreamed that he had killed Ms. Treadwell, and that he would kill himself if he had a gun. After law enforcement officers arrived, they tried to determine Ms. Treadwell's location, but Jennings could not be specific as to her whereabouts. Upon being released from the emergency room, he was taken to the sheriff's office. After Ms. Treadwell's body was found, Jennings was informed of his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) and gave a more detailed statement. The victim had been brutally beaten and strangled to death. Blood samples taken from Jennings' hands and jeans matched the victim's DNA.

Jennings was charged with alternative counts of malice murder and felony murder during the commission of aggravated assault. After a jury trial, Jennings was found guilty of both counts. Although the trial court entered judgments of conviction on the two guilty verdicts and imposed concurrent sentences of life imprisonment, it corrected the judgment on motion for new trial, properly finding that the felony murder count was surplusage and should be vacated, and striking the sentence based on that count. *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). The motion for new trial was otherwise denied, and Jennings appeals.[*]

1. A review of the evidence reveals that, when construed most strongly in support of the jury's verdict, it is sufficient to find Jennings guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Teal v. State*, 282 Ga. 319, 321 (1) (647 SE2d 15) (2007).

2. Jennings contends that his trial counsel rendered ineffective assistance by failing to raise the issue of his mental capacity as a defense and to have a mental evaluation completed to determine his capacity to stand trial. See *Martin v. Barrett*, 279 Ga. 593 (619 SE2d

---

[*] The homicide occurred on April 11, 2003, and the grand jury returned an indictment on June 10, 2003. The jury found Jennings guilty on October 15, 2004, and the trial court entered judgment on November 16, 2004. The motion for new trial was filed on November 15, 2004. It was denied, and the judgment was corrected, on June 5, 2006. On May 3, 2007, the trial court granted Jennings' motion to pursue an out-of-time appeal, and he filed a notice of appeal on that same day. The case was docketed in this Court on June 21, 2007, and submitted for decision on the briefs.

656) (2005). To prevail on this claim under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Jennings " 'must show both deficient performance by trial counsel and actual prejudice. (Cits.)' [Cit.]" *Martin v. Barrett*, supra. " 'On appeal, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. (Cits.)" (Cit.)' [Cit.]" *Sanders v. State*, 281 Ga. 36, 39 (3) (635 SE2d 772) (2006).

Before and during his incarceration for the murder of Ms. Treadwell, Jennings was treated at a mental facility. However, the record does not contain any medical records, expert testimony, or other evidence of his diagnosis or treatment. Compare *Martin v. Barrett*, supra at 595-596. "The burden is on the defendant to show that his attorney's omissions have prejudiced his case — here, that he has a mental condition that should have been investigated and offered" as proof of a defense to criminal liability for Ms. Treadwell's murder or of his incompetence to stand trial for that offense. *Williams v. State*, 258 Ga. 281, 289-290 (7) (368 SE2d 742) (1988).

> The trial record . . . does not demonstrate that [Jennings'] sanity or competency was or should have been a significant issue at trial, and [Jennings] did not offer any evidence at the hearing on his claim of ineffective assistance of trial counsel to support his assertion that his sanity or competency should have been raised as an issue at trial. Accordingly, we conclude that [Jennings] has failed to carry his burden to prove the prejudice prong of his claim that trial counsel was ineffective for failing to request an independent psychiatric examination. [Cits.]

*Bergeson v. State*, 272 Ga. 382-383 (2) (530 SE2d 190) (2000). See also *Williams v. State*, supra. Therefore, Jennings' "claim of ineffective assistance of counsel must fail, and we do not need to consider the performance prong of the *Strickland* test. [Cit.]" *Sanders v. State*, supra.

3. Jennings urges that the trial court erred in admitting into evidence the statements he made at the hospital to a sheriff's deputy and an investigator. His contention is that he was in custody at the time and was not given the *Miranda* warnings.

> *Miranda* warnings are required when a person "is (1) formally arrested or (2) restrained to the degree associated with a formal arrest." [Cit.] Unless a reasonable person in the suspect's situation would perceive that he was in custody, *Miranda* warnings are not necessary. [Cit.]

*Robinson v. State*, 278 Ga. 299, 301 (2) (602 SE2d 574) (2004).

When Jennings spoke to the law enforcement officers at the hospital, he "had not been released from medical treatment or told by medical personnel that he could leave the hospital. More significantly, he was not isolated by police for questioning. . . ." *Robinson v. State*, supra. Thus, he was in a medical, rather than an investigative, setting. See also *Moyer v. State*, 275 Ga. App. 366, 371 (3) (a) (620 SE2d 837) (2005) (defendant was in emergency room and not an isolated part of the hospital). The officers did not ask Jennings any pre-*Miranda* questions regarding what he may have done to Ms. Treadwell. *Robinson v. State*, supra at 301-302 (2). They merely asked him where she was, in an attempt to locate her expeditiously and to assist her if she was alive. The fact that the officers may have suspected Jennings of having committed a murder

> did not render the statements at issue violative of *Miranda*. As long as a person is not in custody, it is irrelevant to the *Miranda* analysis that investigators "(1) might have focused their suspicions upon the person being questioned, or (2) have already decided that they will take the person into custody and charge [him] with an offense." [Cit.]

*Robinson v. State*, supra at 302 (2) (where police had already obtained defendant's bloody clothes). The investigator's uncontradicted testimony at the hearing on the motion to suppress was that Jennings was under observation as a potentially suicidal person, that he was never restrained, and that "he was not in police custody but was free to leave as far as law enforcement was concerned." *Robinson v. State*, supra.

The officers' testimony "supports the finding that [Jennings] was not in custody for the purposes of *Miranda* at the time he made the statements . . . at the hospital. [Cit.] Consequently it was not error to refuse to suppress the statements on the basis urged." *Robinson v. State*, supra. See also *Alwin v. State*, 267 Ga. App. 236, 239 (2) (599 SE2d 216) (2004). Compare *Mayberry v. State*, 267 Ga. App. 620, 623 (600 SE2d 703) (2004) (numerous restrictions on defendant's freedom instituted by police); *Moyer v. State*, supra at 371-372 (3) (b) (defendant held down and handcuffed to gurney). Therefore, Jennings' contention that the alleged *Miranda* violation tainted his subsequent statement at the sheriff's office is moot.

4. The prosecutor made comments during closing argument which Jennings contends could reasonably be construed as comments on his failure to testify.

> In determining whether a prosecutor has improperly commented on an accused's failure to testify, we must evaluate

whether "the prosecutor's manifest intention was to comment on the accused's failure to testify" or whether "the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify." [Cits.] Having evaluated the record, we conclude that the prosecutor's comment[s do] not satisfy either prong of this test.

*Washington v. State*, 279 Ga. 722, 724 (3) (620 SE2d 809) (2005).

After referring to defense counsel's opening statement, the prosecutor stated that "[t]he defense, during the course of this case, presented no evidence," subsequently began to refer to what Jennings' attorney said in opening statement, and later stated that defense counsel "is an experienced lawyer and a fine person." At each of these three points, defense counsel objected to the argument, and the trial court told the prosecutor to move on. "The State's comments were not directed at the defendant's decision not to testify; instead, they were directed at defense counsel's failure to rebut or explain the State's evidence. [Cits.]" *Johnson v. State*, 271 Ga. 375, 383 (15) (a) (519 SE2d 221) (1999). See also *Matthews v. State*, 268 Ga. 798, 804 (6) (493 SE2d 136) (1997). "The complained [of] portion of the prosecutor's closing argument was a comment on [Jennings'] failure to produce evidence, not a prohibited comment on [his] failure to testify. [Cits.]" *White v. State*, 242 Ga. 21, 22 (5) (247 SE2d 759) (1978).

*Judgment affirmed. All the Justices concur, except Sears, C. J., and Hunstein, P. J., who concur specially.*

SEARS, Chief Justice, concurring specially.

I disagree with the Court's determination in Division 3 that the trial court properly admitted the statements Jennings made to the police at the hospital before he was advised of his rights under *Miranda v. Arizona*.[1] In my view, a reasonable person in Jennings's situation would have perceived himself to be "in custody" when he was questioned at the hospital by the sheriff's homicide detective.[2]

---

[1] 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[2] *Yarborough v. Alvarado*, 541 U. S. 652, 661-663 (124 SC 2140, 158 LE2d 938) (2004); *Thompson v. Keohane*, 516 U. S. 99, 112 (116 SC 457, 133 LE2d 383) (1995). The lower courts have struggled to apply the standard articulated in *Yarborough* and its progenitors in the context of hospital interrogations, with varying results. See Kimberly J. Winbush, *What Constitutes "Custodial Interrogation" at Hospital by Police Officer Within Rule of Miranda v. Arizona Requiring that Suspect Be Informed of His or Her Federal Constitutional Rights Before Custodial Interrogation – Suspect Injured or Taken Ill Before or After Commission of Crime*, 25 ALR6th 379 (2007) (collecting and analyzing cases).

However, because the evidence of Jennings's guilt was overwhelming, the error was harmless, and I agree with the Court that the conviction should be affirmed.

On the morning in question, Jennings arrived at the hospital wearing bloody clothes with blood on his hands. He was there for treatment of a drug overdose, not an external physical injury. He told anyone who would listen — including hospital personnel — that he thought he had beaten his girlfriend to death and left her body in a wooded area. Naturally, the hospital staff informed the sheriff's department of Jennings's claims, and shortly thereafter, an armed, uniformed deputy arrived and stood guard over Jennings in his hospital room. When homicide investigator Paul Godden arrived at the hospital, he immediately began questioning Jennings regarding what had happened to his girlfriend, and after eliciting the incriminating statements in question, he bagged Jennings's bloody clothes as evidence and swabbed the surface of his right and left hands in eight different places to collect blood samples for later forensic analysis. Under these circumstances, a reasonable person would not have believed that he was free to depart and go about his business as he pleased.[3]

The State's argument to the contrary rests primarily on the testimony of Godden. However, Godden's claim that Jennings "was free to leave as far as law enforcement was concerned" strains credulity to the breaking point. No responsible law enforcement officer would allow a man like Jennings — who showed up at the hospital covered in blood, with no physical injuries of his own, and claiming he had just beaten someone to death — to simply get up and leave. If common sense alone were not enough to disprove Godden's claim, there would still be the directly contradictory testimony of the armed deputy sheriff who actually guarded Jennings that he would not have allowed Jennings to leave the room without further instructions from his superiors. In any event, the subjective intent of Godden and the deputy sheriff is not determinative; what matters is what a reasonable person in Jennings's condition, taking into account all the relevant circumstances, would have believed his position to be.

Similarly untenable is Godden's claim that sheriff's deputies were stationed in Jennings's hospital room solely for observation

---

[3] *Yarborough*, supra, 541 U.S. at 663 ("Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.") (quoting *Thompson*, supra, 516 U.S. at 112).

because they feared he might try to commit suicide again. Sheriff's deputies do not generally monitor suicidal patients in hospitals as part of their official duties — unless, of course, the particular patient is in custody.

For the foregoing reasons, I concur specially in the opinion of the Court.

I am authorized to state that Presiding Justice Hunstein joins in this special concurrence.

DECIDED NOVEMBER 5, 2007.

*Barbara B. Claridge*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.