## A01A1799. MANGOLD v. THE STATE.
(559 SE2d 103)

POPE, Presiding Judge.

Randall Mangold was tried for felony murder, involuntary manslaughter, aggravated assault, and pointing a gun at another. He was acquitted of felony murder, but convicted of involuntary manslaughter. Here, he appeals, raising four enumerations of error. For the following reasons, we affirm.

Viewing the evidence in the light most favorable to the verdict, it showed that on February 22, 1999, Mangold and the victim, Stephen Elwood, were both in the Navy and were stationed at Kings Bay, Georgia. On the evening of February 22, the men were planning to go out; before going to the bar, Elwood asked to see Mangold's .45 revolver. Elwood looked at it, and Mangold indicated that the gun was not loaded.

The men then went to a nightclub, where they both drank alcohol heavily. They were joined at the club by Elwood's girlfriend, Christie Cowart.

The three eventually left the bar, bought some food, and went to Mangold's house. Mangold carried Elwood, who had been vomiting from excessive alcohol consumption, into the house, and at some point Cowart prepared food. Then they all sat in the living room; Elwood had his head on Cowart's shoulder. Cowart encouraged Elwood to eat, but he refused. Mangold got up and said, "I'm going to

make you eat." Mangold then grabbed a gun that was lying on the sofa and put the gun between Elwood's eyes. Mangold said: "get up and eat, Elwood, or I'll blow your — head off." The gun was touching Elwood's forehead, and it dropped and hit him on the nose. Elwood then said, "Quit it, man. That hurts." At this point, Mangold put the gun back up to Elwood's head and shot. Cowart immediately called 911 and reported the shooting. Mangold then came in the room, telling Cowart that he "didn't mean to do it" and to call 911.

After the shooting, the police took a statement from Mangold in which he stated: "Steve [Elwood] had not sobered up enough to eat, but I coaxed him. I picked up the gun and waved it at him, telling him that he should eat or I would shoot him. I was kidding with him and had no intentions of shooting him, but the gun went off."

At trial, three witnesses testified to similar incidents involving Mangold's behavior with guns. Todd Hennon testified that Mangold had numerous weapons at his residence and that sometimes Mangold would get "drunk and start goofing around and then he'd pick up . . . a gun." Hennon further testified that there "were a couple of times he pointed one at me." He also recalled that Mangold had jokingly threatened to shoot him.

The second witness to these similar incidents, Timothy Bean, testified that Mangold kept numerous guns in his residence and that there had been occasions when Mangold was drinking that he had pointed a gun at him and another friend, perhaps Elwood. Bean further testified that during these episodes, Mangold had also made threats.

The third witness, Roger Lackey, stated that he knew that Mangold kept numerous weapons in his residence and that many of the guns were loaded. This witness recounted two separate episodes in which Mangold pointed guns at him after drinking alcohol. Lackey also recalled one occasion when Mangold had discharged a gun in his residence and, with Elwood present, shot a bullet hole in the bedroom wall. Finally, Lackey recalled a time when Mangold tossed a rifle at him and said, "shoot me or I'll shoot you."

The autopsy report indicated that there was a contact range gunshot wound to Elwood's head. The entry wound was in the forehead.

Mangold did not testify at trial.

1. In his first enumeration of error, Mangold contends that the trial court erred in failing to charge the jury on the defense of accident because the charge was warranted by the evidence and constituted his sole defense. Mangold claims that his defense was that he was waving the gun at Elwood and that Elwood swatted at the gun, causing the gun to discharge. As pointed out by the State, Mangold's defense was that the gun *discharged* by accident, not that he pointed the gun at Elwood accidentally. In fact, during closing argument

Mangold's attorney conceded that there was "no doubt the gun was pointed." Mangold's attorney then clearly stated: "[a]ll the evidence shows it." Mangold did not argue that he did not point the gun at Elwood.

In *New v. State*, 260 Ga. 441 (1) (396 SE2d 486) (1990), our Supreme Court determined that the defense of accident was inapplicable when the defendant had intentionally pointed a gun at the victim's face. The court cited OCGA § 16-2-2, which outlines the defense of accident: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or *criminal negligence*." (Emphasis supplied.)

The *New* court continued:

> Criminal negligence as used in the statutes of this State means not merely such negligence as might be the foundation of a damage suit, but reckless and wanton negligence of such a character as to show an utter disregard for the safety of others who might reasonably be expected to be injured thereby.

*New v. State*, 260 Ga. at 441 (1).

In rejecting the defendant's accident defense, the *New* court stated: "[c]ocking and aiming a gun . . . at someone's face is an utter disregard for the safety of that person and constitutes criminal negligence." *New v. State*, 260 Ga. at 442 (1). In fact, in *Stiles v. State*, 264 Ga. 446, 447-448 (2) (448 SE2d 172) (1994), our Supreme Court stated:

> [w]here, as in the instant case, it is shown by the evidence, and admitted in the defendant's statement, that the homicide occurred by the discharge of a gun held by the accused which placed another in reasonable apprehension of immediately receiving a violent injury, even if the discharge of the gun was unintentional, the offense is murder; and in no view of such facts does it involve accident.

(Citations and punctuation omitted.) Id. See also *Davis v. State*, 269 Ga. 276, 279-280 (3) (496 SE2d 699) (1998). Accordingly, we find no error in the trial court's refusal to charge accident.

2. In two enumerations, Mangold claims that the trial court erred in its charges regarding alcohol. Mangold first claims that the trial court erred in charging on the issue of alcoholism because this charge intimated that the court thought that Mangold was an alcoholic when the evidence did not establish this fact.

This argument lacks merit. The court tracked the language of the pattern charge that alcoholism is not a defense to a crime. Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (1991), Part 3, Z (3), p. 42. There was sufficient evidence in the record to justify this charge, and we find no error. Moreover, even assuming that the court improperly charged the jury in this regard, we find that this instruction was not prejudicial to Mangold. See *Green v. State*, 190 Ga. App. 130, 131 (2) (378 SE2d 178) (1989).

Likewise, Mangold claims that the court erred in its charge regarding voluntary intoxication. Specifically, Mangold claims that the court's charge on voluntary intoxication was incomplete and that it incorrectly instructed the jury regarding specific intent. This argument also fails. The charge was a correct statement of the law and again tracked the language of the pattern charges. We find no error. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (1991), Part 3, Z (1), p. 41; see generally *Pickstock v. State,* 235 Ga. App. 451, 453 (3) (509 SE2d 717) (1998).

3. Mangold claims that his trial counsel was ineffective in failing to move for a directed verdict either at the conclusion of the State's case or at the close of the trial. No motion for new trial was filed on Mangold's behalf, so no claim of ineffective assistance of counsel was raised in the court below. Trial counsel filed the notice of appeal, and appellate counsel did not file an entry of appearance in the case until several months after the notice of appeal was filed. Thus, the record shows that the instant appeal is the "earliest practicable moment" that Mangold's appellate counsel could raise an ineffective assistance claim against trial counsel. "Notwithstanding, if [Mangold's] claims can be resolved as a matter of fact or law upon the existing record, we will not remand this case. [Cit.]" *Massingill v. State*, 240 Ga. App. 690 (2) (524 SE2d 746) (1999). "In cases such as this, when the issue can be decided from the record on appeal, a remand to the trial court for a ruling on this issue would be 'wasteful of judicial and legal resources' and 'would serve no useful purpose.'" (Citations omitted.) *Forsman v. State*, 239 Ga. App. 612, 615 (8) (521 SE2d 410) (1999); see also *Elrod v. State*, 222 Ga. App. 704, 705 (475 SE2d 710) (1996).

Here, after reviewing the existing record, we find that Mangold's claim that his counsel was ineffective fails.

In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), [Mangold] must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted

from a breakdown in the adversary process that renders the result unreliable.

(Citations and punctuation omitted.) *Backey v. State*, 234 Ga. App. 265, 266 (3) (506 SE2d 435) (1998). First, there has been no showing that counsel's failure to move for a directed verdict was deficient. Moreover, Mangold has failed to show how this alleged deficiency harmed him. There was repeated testimony that Mangold pointed the gun at Elwood and that the gun discharged. Given this evidence, Mangold has failed to show how the outcome of the trial would have been different absent his attorney's alleged errors. See *Woods v. State*, 271 Ga. 452, 454 (2) (c) (519 SE2d 918) (1999). The evidence adduced at trial was sufficient to overcome a motion for directed verdict and was sufficient for a rational trier of fact to find Mangold guilty of involuntary manslaughter beyond a reasonable doubt under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JANUARY 18, 2002.

*Clyde M. Urquhart, Bruce S. Harvey, David S. West, David W. Martin*, for appellant.

*Stephen D. Kelley, District Attorney, George C. Turner, Jr., Assistant District Attorney*, for appellee.