311 Ga. 280
FINAL COPY

S21A0422.  THOMAS v. THE STATE.

BETHEL, Justice.

A Fulton County jury found Courtney Thomas guilty of malice murder and other offenses in connection with the shooting death of his girlfriend, Shevonta Hardwick. Following the denial of his motion for new trial, Thomas appeals, arguing that his trial counsel provided constitutionally ineffective assistance by withdrawing a motion to suppress evidence obtained by the police during a search of Thomas's vehicle. We affirm.[1]

---

[1] The crimes occurred on October 31, 2013. On January 28, 2014, a Fulton County grand jury returned an indictment charging Thomas with malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. At a jury trial held from September 14 to 16, 2016, Thomas was found guilty on all counts. The trial court sentenced Thomas to life in prison for malice murder and a consecutive term of five years in prison for possession of a firearm during the commission of a felony. The remaining counts were either vacated by operation of law or merged for sentencing. On September 22, 2016, Thomas filed a motion for new trial, which he amended through new counsel on November 12, 2019. The trial court held a hearing on the motion, as amended, on January 9, 2020, and it denied the motion, as amended, on January 30,

1. The evidence presented at trial showed the following. Thomas and Hardwick lived together in Hapeville in a ground-level apartment with one of Thomas's brothers, Dennis Thomas. The apartment had a balcony that was about seven feet above the ground. Several witnesses, including Thomas, testified that Thomas and Hardwick had a good relationship and that there had never been any violence, arguments, or aggressive behavior between them.

On the evening of October 30, 2013, Thomas and Hardwick were in the apartment alone together. Two upstairs neighbors reported hearing three loud bangs, consistent with the sound of gunshots, coming from an apartment below them around 11:00 p.m. One neighbor also heard a man and woman arguing inside an apartment prior to hearing the bangs. The neighbor testified that it was obvious the argument was "turning physical."

Dennis had spent the evening at a friend's house. He came back

2020. Thomas filed a motion for an out-of-time appeal on June 8, 2020, which the trial court granted that day. Thomas filed a notice of appeal on June 12, 2020. This case was docketed to this Court's term commencing in December 2020 and submitted for a decision on the briefs.

to the apartment after midnight and went to sleep. He did not see Thomas or Hardwick when he came in. The next morning, Dennis went into the bedroom that Thomas and Hardwick shared and found Hardwick's body on the floor, against the foot of the bed and facing the balcony door. She was unresponsive. Dennis called Marquez Higgins, and they both tried unsuccessfully to call Thomas. They then called 911.

Hapeville police officers responded to the 911 call and began searching the apartment. In the bedroom, they found a receipt for the purchase of a firearm in Thomas's name,[2] a broken cell phone that belonged to Hardwick, four Luger Hornady 9mm shell casings, one blood spot on the bed, and a bullet fragment. There were signs of a struggle, including clothing and personal items strewn on the floor, a broken shower curtain in the adjacent bathroom, and broken wires on the bedroom television.[3] It did not appear to the police that

---

[2] A salesman from a pawn shop testified that he sold Thomas a Smith & Wesson handgun, model SD9VE, in August 2013.

[3] Dennis testified that Thomas and Hardwick normally kept the bedroom neat and clean.

Hardwick's body had been moved.

The balcony door was open when Dennis and Higgins came in the bedroom and when the officers searched the apartment. Beneath the balcony, the officers located a black left-foot Nike sandal that Dennis indicated belonged to Thomas. The officers also noticed that bushes surrounding the balcony were damaged.

Later that day, a detective from the Hapeville Police Department obtained a court order directing Thomas's cell phone service provider to release to the police certain data associated with Thomas's cell phone, including cell-site location information ("CSLI").[4] The detective then worked with the service provider to track Thomas's cell phone using CSLI as the phone traveled away from the Atlanta area to a location on a highway near the border

---

[4] A "cell site" typically consists of a set of either three or six directional radio antennas mounted on a tower, light post, flagpole, church steeple, or the side of a building. See *Carpenter v. United States*, 308 U. S. __, __ (I) (A) (138 SCt 2206, 201 LE2d 507) (2018). Unless powered off, a cell phone continuously scans its environment looking for the strongest signal, which generally comes from the nearest cell site. See id. Each time a phone connects to a cell site, the connection generates a time-stamped digital record in the service provider's account records that includes the particular cell site and the specific antenna activated ("sector" information); such records are known as cell-site location information. See id.

between Missouri and Iowa. The detective contacted the Iowa State Patrol, stated that Thomas was a murder suspect and was being tracked, and gave a description of the vehicle Thomas was thought to be driving. Minutes later, an Iowa patrol officer stopped Thomas's vehicle and arrested him without incident.

After obtaining a search warrant, officers from the Iowa State Patrol and the Council Bluffs, Iowa, Police Department searched Thomas's vehicle. They found an iPhone; two unfired Luger Hornady 9mm rounds of ammunition, a disassembled Smith & Wesson handgun (model SD9VE),[5] an empty 9mm handgun magazine, a black handgun holster, clothing, $32 in cash, and a black right-foot Nike sandal.

The police searched and photographed Thomas after he was arrested. During the search, the police found Hardwick's bank debit card in Thomas's wallet. Records from the bank showed that Hardwick was the only authorized user of the card and that the card had been used on October 31 at a gas station in Tennessee. Thomas

---

[5] The handgun was found in three separate pieces.

later admitted using the card to buy gas. Photographs of Thomas showed that he had a bump on his forehead, a scrape on his elbow, a swollen ankle, and other minor injuries.

Hardwick's autopsy revealed that she was shot four times and that she died of multiple gunshots to the torso. The manner of her death was homicide. The medical examiner recovered three bullets from Hardwick's body during the autopsy. There was no soot or stippling on Hardwick's body or clothing, which, according to the medical examiner, indicated that she had been shot from at least two feet away. The medical examiner also testified that Hardwick had a bruise and cuts on her right arm that appeared to have been caused at or near the time of her death. Hardwick had entry wounds on both her front and back, which were consistent with Hardwick turning away as she was being shot. Further, the bullets recovered during Hardwick's autopsy and the bullet and cartridge casings found near Hardwick's body were determined to be Hornady 9mm ammunition that had been fired from the handgun found in Thomas's car.

Thomas testified at trial. He admitted shooting Hardwick, but he claimed he acted in self-defense. He specifically testified as follows.

Thomas told the jury that he owned a gun that he often kept on the nightstand of the bedroom he shared with Hardwick. He kept the gun loaded and "ready to shoot" because he was worried that someone could get into the apartment through the ground-level balcony. Thomas said that Hardwick owned a .38-caliber handgun that he had bought for her, but he did not know where she kept it. On the night of the shooting, Thomas and Hardwick got into a protracted argument after Hardwick became suspicious that Thomas was sending text messages to other women. Their argument escalated into a physical confrontation. Hardwick hit him in the face, which broke his braces and caused his mouth to bleed. Later, Hardwick came into the bathroom and hit him several times. Thomas then shoved Hardwick against the bathroom wall. She began crying, and Thomas apologized. Hardwick then stood up and said, "You're dead."

Hardwick then began rummaging through her belongings in the apartment. In the bedroom, she tried to pull the television from the wall, again told Thomas, "You're dead," and walked out of the room, slamming the door behind her. Thomas could hear her opening and closing kitchen drawers, and then Hardwick "busted" into the bedroom and again shouted, "You're dead." According to Thomas, she had her arm raised, and something was in her hand. Thomas was sitting on the bed. He grabbed his gun from the nightstand and began firing. He fired four shots and stopped firing when Hardwick fell to the ground next to the foot of the bed. Thomas testified that he was not trying to kill Hardwick and was only trying to stop her from coming toward him.

Thomas did not check on Hardwick. Rather, he immediately grabbed clothes from his closet and ran out of the bedroom through the balcony door. He jumped over the balcony rail, went to his car, and drove away. As Thomas drove away from the Atlanta area, he received numerous phone calls and text messages but refused to answer because he was "ashamed." While driving, he called a suicide

hotline because he considered committing suicide. He said that he disassembled the gun and placed its pieces in different parts of the car to "sav[e] his life" and that he threw unused rounds of ammunition from his gun out of the car as he was driving.[6]

2. In his sole enumeration of error, Thomas argues that his trial counsel provided constitutionally ineffective assistance by withdrawing a motion to suppress evidence obtained by the police during the search of Thomas's car, the location of which was determined by the use of "real-time" CSLI that identified the location of his iPhone as Thomas was driving. Thomas argues that his trial counsel should not have withdrawn the motion because she should have been aware of then-existing case law from various state and federal courts before the United States Supreme Court's decision in *Carpenter v. United States*, 585 U. S. __ (138 SCt 2206, 201 LE2d 507) (2018), which generally requires that law

---

[6] Thomas does not argue that the evidence was insufficient to support his convictions, and because this case was docketed to the term beginning in December 2020, we no longer routinely review that issue sua sponte. See *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020).

enforcement obtain a search warrant supported by probable cause in order to obtain "historical" CSLI. Thomas argues that had counsel pursued the motion to suppress, the evidence obtained from Thomas's car after he was located through the use of CSLI would have been excluded at trial, or, at a minimum, issues relating to the search would have been properly preserved for appeal.

The trial court determined that Thomas's trial counsel did not perform deficiently by not pursuing the motion to suppress. We agree.

> To prevail on this claim, Thomas
>
> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [Thomas] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [Thomas] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citation and punctuation omitted.) *Stuckey v. State*, 301 Ga. 767,

771 (2) (804 SE2d 76) (2017) (citing *Strickland v. Washington*, 466 U. S. 668, 697 (104 SCt 2052, 80 LE2d 674) (1984)). "A strong presumption exists that counsel's conduct falls within the broad range of professional conduct." (Citation and punctuation omitted.) *Ford v. State*, 298 Ga. 560, 566 (8) (783 SE2d 906) (2016).

In October 2015, Thomas's first trial counsel filed a pre-trial motion to suppress evidence obtained during the search of Thomas's vehicle following his arrest in Iowa. In that motion, Thomas argued that the police had been able to locate Thomas only by unlawfully tracking his movements in real time utilizing CSLI. Thomas asserted that the surveillance constituted a search under the Fourth Amendment and that, although Georgia courts had yet to address the issue, the Florida Supreme Court had recently held that individuals have a reasonable expectation of privacy in the location data transmitted from a personal cell phone, even while traveling on public roads. See *Tracey v. State*, 152 S3d 504, 526 (Fla. 2014). Thomas argued that his arrest violated the United States Constitution and the Georgia Constitution and that all evidence

11

obtained in the arrest and the subsequent search of his car should be suppressed.

Thomas's first trial counsel later withdrew from representing him, and Thomas obtained new counsel. At the start of Thomas's trial in September 2016, his new counsel withdrew the motion to suppress. Counsel informed the trial court that, after reviewing the motion to suppress, discussing it with Thomas, and conducting further research, she did not believe there was a legal basis for the motion and specifically noted a then-recent decision from the United States District Court for the Northern District of Georgia denying a defendant's motion to suppress CSLI records based on the determination that the defendant in that case had no legitimate expectation of privacy in those records and that the Fourth Amendment was not violated. See *United States v. Wilson*, No. 1:11-cr-53-TCB, 2013 U.S. Dist. LEXIS 37320, at *2 (N.D. Ga. March 19, 2013). Later, at the hearing on Thomas's motion for new trial, trial counsel testified that, at the time she withdrew the motion to suppress, it was her impression that courts had been split about

12

whether a warrant would be required in order to obtain CSLI.

At trial, as noted above, Thomas admitted shooting and killing Hardwick and testified at length about the circumstances of the shooting. He claimed he did not intend to kill Hardwick and that he was acting in self-defense.[7] In her opening statement and closing argument, counsel argued that Thomas made a "split second" decision to shoot Hardwick in self-defense when Hardwick came into the bedroom with her arm raised. Counsel emphasized to the jury that Thomas then fled from the apartment in a panic and later called a suicide hotline and disassembled his gun in order to protect himself because he was "distraught." Counsel also emphasized that Thomas had cooperated with the police and was taken into custody without incident.

At the hearing on Thomas's motion for new trial, trial counsel

---

[7] In addition to self-defense, at Thomas's request, the jury was instructed that it could find Thomas guilty of voluntary manslaughter as a lesser offense of malice murder and felony murder. In her closing argument, without conceding that Thomas was guilty, Thomas's trial counsel referred to the voluntary manslaughter charge as another "option" that the jury could consider instead of finding Thomas guilty of murder. We express no opinion on whether the evidence supported a charge on voluntary manslaughter.

testified that she abandoned the motion to suppress because attempting to exclude items seized in the search of Thomas's car would be inconsistent with the self-defense theory she planned to pursue at trial. Counsel testified that, in her discussions with Thomas, he had been "adamant" that he acted in self-defense and that counsel believed the evidence obtained in the search of his car actually furthered the self-defense theory because it demonstrated how "scared," "panicked," and "traumatized" Thomas was after killing Hardwick.

In light of Thomas's decision to testify, his detailed testimony regarding the circumstances of Hardwick's shooting, and his "adamant" claim to his counsel that he had acted in self-defense, it was reasonable for counsel to vigorously pursue a self-defense theory at trial and to characterize any evidence at her disposal in any way that could advance that theory. Counsel's testimony at the hearing on Thomas's motion for new trial makes clear that she believed at the time that, even if there were a legal basis for suppressing the evidence found in Thomas's car, it could be

14

advantageous to Thomas's defense to have the evidence admitted because counsel could use it to support the self-defense claim. This decision was not objectively unreasonable under the circumstances and therefore cannot form the basis of a claim of ineffective assistance of counsel. See *Reyes v. State*, 309 Ga. 660, 671 (3) (a) (847 SE2d 194) (2020) (no deficient performance where counsel could reasonably determine that best defense strategy was to forgo a motion to suppress DNA evidence, welcome its admission, and offer a plausible explanation for its presence at the crime scene); *Dent v. State*, 303 Ga. 110, 118 (4) (a) (810 SE2d 527) (2018) ("[A]t the motion-for-new-trial hearing, trial counsel testified that he wanted the video of the custodial interrogation admitted because, in his opinion, it assisted his client's defense. Thus, this was a strategic decision which has not been shown to be professionally unreasonable."); *Gomez v. State*, 301 Ga. 445, 459 (6) (a) (801 SE2d 847) (2017) (no deficient performance where counsel could reasonably determine that best strategy was to forgo objection to certain testimony and instead use it to challenge the State's theory

15

of the case). Because Thomas has failed to show that his trial counsel performed deficiently by withdrawing the motion to suppress, his claim of constitutionally ineffective assistance of counsel fails.[8]

*Judgment affirmed. All the Justices concur.*

Decided April 5, 2021.

Murder. Fulton Superior Court. Before Judge Millender.

*Charles H. Frier*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Burke O. Doherty, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.

---

[8] We note that this Court recently held that the exclusionary rule does not apply where, before *Carpenter* was decided, law enforcement officers relied on statutory law and then-binding appellate precedent to obtain CSLI without a warrant. See *Lofton v. State*, __ Ga. __, __ (2) (854 SE2d 690) (2021). Because we hold that Thomas's trial counsel did not perform deficiently because she had a reasonable strategic purpose for withdrawing the motion to suppress, we need not address whether her decision constituted ineffective assistance of counsel related to the merits of the underlying motion.