317 Ga. 127
FINAL COPY

S23A0613. WHITTAKER v. THE STATE.

PINSON, Justice.

Appellant Steven Whittaker was convicted of malice murder and related crimes in connection with the stabbing death of LeBron Hankins.[1] On appeal, Whittaker contends that (1) the evidence was insufficient to sustain his convictions for malice and felony murder; (2) the trial court committed plain error by failing to instruct the jury that Whittaker had no duty to retreat; (3) trial counsel gave constitutionally ineffective assistance in a number of ways; and (4)

---

[1] The crimes occurred on August 17, 2018. On September 4, 2018, a Walker County grand jury indicted Whittaker for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), and possession of a knife during the commission of a felony (Count 4). Whittaker was tried by a jury from May 24 to 25, 2021. The jury found him guilty of all counts. Whittaker was sentenced to serve life in prison without the possibility of parole on Count 1 and five years on Count 4 to be served consecutively to Count 1. The remaining counts were purportedly merged into Count 1. Whittaker filed a motion for new trial on June 1, 2021, which he amended twice through new counsel. Following a hearing, the court denied the motion for new trial on November 22, 2022. Whittaker filed a timely notice of appeal. The case was docketed to the April 2023 term of this Court and submitted for a decision on the briefs.

the trial court erred by failing to enter an order vacating the sentence for felony murder. But the evidence was sufficient to support his malice-murder conviction, and his sufficiency challenge as to his felony-murder conviction is moot because he was not sentenced on that count. The trial court did not err by failing to instruct the jury that Whittaker had no duty to retreat because retreat was not placed at issue. Whittaker's counsel did not perform deficiently in any of the ways Whittaker asserts. And although the felony-murder count should have been vacated by operation of law, there is no sentencing error to correct because the error will have no actual effect on Whittaker's sentence. So we affirm Whittaker's convictions and sentence.

1. Whittaker and Hankins had been friends for decades. But as one of their neighbors put it, "they weren't good for each other when they were drinking." When they were drinking liquor, "[t]hey'd just get drunk and want to argue." While they did not often fight physically, Whittaker would often "verbal[ly] abuse" Hankins when drunk. Another neighbor noted that Hankins "was scared of

2

[Whittaker] when they were drunk." A third neighbor said that Whittaker was "[b]ad, he's like Dr. Jekyll and Mr. Hyde" when he drinks liquor and he was often "bossy" to Hankins. That neighbor also testified that she had seen Whittaker "slap[ ] [Hankins] upside the head" before and that Hankins "was very passive."

On the evening of August 17, 2018, Whittaker and Hankins were drinking beer and liquor at Whittaker's house. Later in the night, Whittaker called 911 to ask for an ambulance: he told the operator that Hankins "stabbed me seven times in the d**n gut" and "I killed him." He said Hankins had been dead for about an hour.

When Walker County Sheriff's Deputy Charles Barrett walked into the house in response to the call, he heard Whittaker laughing in the kitchen and holding his side, and he saw Hankins lying on the ground in "an extremely, extremely large pool of blood." He noted the blood had coagulated, "[s]o some time had passed before the 911 call was made." Deputy Barrett said Whittaker then "fell backwards due to [ ] being intoxicated." As he applied pressure to Whittaker's wound, Whittaker began laughing again. He told Deputy Barrett

3

that he and Hankins had been drinking liquor, they had an argument, and then Hankins stabbed Whittaker in the stomach. Whittaker said he then blacked out "and when he came to he disarmed Mr. Hankins and then defended himself." Whittaker claimed to have stabbed Hankins two to three times in his upper body. Whittaker had two stab wounds: one around his navel and another shallow wound to the left of his rib cage. Once EMS arrived, Whittaker was taken by ambulance to the hospital for treatment.

Walker County Sheriff's Office Investigator Eddie Hill testified that when he arrived, Hankins was lying on his back in a large pool of blood, and there was so much blood that his face was unrecognizable. A "massive amount of coagulated blood" had pooled around Hankins, including "a large amount of blood in the straddle-type area" of Hankins's shorts, which Hill determined was from Whittaker having sat on Hankins's stomach. He also saw a "large gaping hole" in Hankins's torso, likely a postmortem wound based on the lack of bleeding in that area. And he found a knife with a black handle and a 3.5-inch partially serrated blade, which had

Hankins's blood on it.

The next day, Investigator Hill interviewed Whittaker at the hospital. He testified that Whittaker was not in custody or under arrest at that point, so he did not read Whittaker his rights under *Miranda*.[2] Whittaker told Hill that he and Hankins had been drinking beer since noon and later had a "stiff drink." Whittaker said he had no memories from after the time he spoke with a neighbor around 7:00 p.m. until he woke up on the kitchen floor and saw Hankins lying there, at which point he called 911. He then remembered that Hankins "stabbed me, and I came unglued." He did not remember if he and Hankins argued that night. He said Hankins "claimed he's a fighter" and "in martial arts," but that "I don't think the man can fight his way out of a paper bag" and that "[a]nytime I ever scolded him . . . he ducked his head." Two days later, Whittaker was arrested.

A GBI forensic toxicologist testified that Hankins's blood-alcohol content (BAC) was 0.261. He explained that for an average

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

social drinker, a person with a 0.261 BAC would have a "rough time" trying to speak clearly or stand up, but a more experienced drinker "can appear perfectly sober until you start asking them to do multiple things, divided attention." He testified that a "more experienced drinker[ ]" would be someone who drinks daily over the course of several years.

Dr. Keith Lehman performed Hankins's autopsy. He testified that Hankins suffered from 50 stab wounds, most of which were to the face, neck, and scalp. The stab wounds penetrated all the way to the bone, one punctured Hankins's vocal box, one cut his heart, and one cut his right lung. Patterned wounds on Hankins's chin suggested the use of a serrated blade. There were also blunt-force injuries to the side of Hankins's face, a fracture of his cervical spine likely caused by a blow to the head, and evidence of strangulation. Dr. Lehman determined the manner of death was homicide caused by a combination of the strangulation, blunt-force injuries, and stab wounds. He explained that Hankins had "a number of injuries . . . that have a significant lethal potential."

2. Whittaker contends that the evidence to support his malice-murder conviction was insufficient.[3] In his view, the evidence at most supported voluntary manslaughter because, according to Whittaker, Hankins started the fight when he "told Whittaker that Hankins could fight" while they were both drunk; Hankins "introduced the knife into the fight by stabbing Whittaker first"; and "Hankins' excessive injuries further support that Hankins was killed during a sudden heat of passion." See OCGA § 16-5-2 (a) ("A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]").

When reviewing the sufficiency of the evidence, we view the

---

[3] Whittaker also challenges the sufficiency of the evidence to support his felony-murder conviction. But this challenge is moot because his felony-murder conviction was vacated by operation of law. See *Mills v. State*, 287 Ga. 828, 830 (2) (700 SE2d 544) (2010). See Division 5, below.

evidence presented in the light most favorable to the verdicts to determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). We do not "weigh the evidence on appeal or resolve conflicts in trial testimony." *Byers v. State*, 311 Ga. 259, 266 (2) (857 SE2d 447) (2021) (citation and punctuation omitted). Instead, we defer "to the jury's assessment of the weight and credibility of the evidence." *Jones v. State*, 314 Ga. 692, 695 (878 SE2d 502) (2022) (citation and punctuation omitted). And "whether or not a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, reducing the offense from murder to manslaughter, is generally a question for the jury." Id. (cleaned up).

Viewed in the light most favorable to the verdict, the evidence at trial was sufficient to support Whittaker's malice-murder conviction.

A person commits the offense of murder when he

unlawfully and with malice aforethought . . . causes the death of another human being. The State, of course, must prove malice beyond a reasonable doubt to convict someone of malice murder, as malice incorporates the intent to kill. Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof . . . . The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing. It is for the jury to determine from all the facts and circumstances whether a killing is intentional and malicious.

*Benton v. State*, 305 Ga. 242, 244 (1) (a) (824 SE2d 322) (2019) (citations and punctuation omitted). See also OCGA § 16-5-1 (a).

The evidence authorized the jury to find that Whittaker formed the intent and malice necessary to convict him of malice murder. Whittaker and Hankins were drinking alcohol at Whittaker's home and got into an argument; according to Whittaker, Hankins stabbed Whittaker twice;[4] and Whittaker stabbed Hankins 50 times, strangled him, and broke his neck. Evidence of Whittaker's brutal and excessive actions in connection with his argument with Hankins supports the jury's finding of the requisite malice and intent to

---

[4] The State does not argue or suggest that Whittaker caused these stab wounds himself.

9

support his malice-murder conviction. See *Rose v. State*, 287 Ga. 238, 239 (1) (695 SE2d 261) (2010) (holding the evidence was sufficient to support a malice-murder conviction when, after a "trivial" argument, defendant stabbed victim 26 times); *Campbell v. State*, 278 Ga. 839, 841 (1) (607 SE2d 565) (2005) (holding that the evidence showing that the defendant initiated the fight, "tackled the much smaller man as he attempted to flee[,] and repeatedly stabbed his unarmed victim amply authorized the jury to find malice"); *Frezghi v. State*, 273 Ga. 871, 871 (1) (548 SE2d 296) (2001) (holding that the evidence was sufficient to support a malice-murder conviction based on "the numerous stab wounds and the cruel and deliberate nature of the final wound").

The evidence was also sufficient to authorize the jury to conclude that the State disproved his affirmative defense of self-defense beyond a reasonable doubt. See *Pritchett v. State*, 314 Ga. 767, 770 (1) (879 SE2d 436) (2022). "The use of excessive force or unlawful force while acting in self-defense is not justifiable." *Willerson v. State*, 312 Ga. 369, 372 (1) (863 SE2d 50) (2021) (citation

and punctuation omitted). As an initial matter, the jury was authorized to reject Whittaker's claim that Hankins was the initial aggressor given the evidence about their relationship and his bullying of Hankins. And in any event, the jury was authorized to find that Whittaker was not acting in self-defense when he killed Hankins given the "brutality of the attack" and the "extent of the victim's injuries" in comparison to Whittaker's relatively minor injuries. Id. at 373 (1) (holding that the evidence was sufficient to support the malice-murder conviction over the defendant's claim of self-defense "[g]iven the brutality of the attack against the victim, the extent of the victim's injuries, and the fact that [the defendant] suffered no injuries in the altercation"); *Jimmerson v. State*, 289 Ga. 364, 367 (1) (711 SE2d 660) (2011) (holding that the evidence was sufficient to overcome the defendant's justification defense when the defendant disarmed one victim, then shot both unarmed victims and continued shooting them after they had fallen to the ground); *Clark v. State*, 271 Ga. 27, 29 (2) (518 SE2d 117) (1999) (jury was properly instructed that "[t]he use of excessive force or unlawful force while

11

acting in self[-]defense is not justifiable").

Whittaker argues that the evidence supported only a conviction for voluntary manslaughter, on which the jury had been instructed, and not malice murder. But the evidence here authorized the jury to reject his claim that he acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a) (voluntary manslaughter). The evidence authorized the jury to reject Whittaker's claim that Hankins was the initial aggressor, and it in any event showed that Whittaker's response to Hankins's statement about being a fighter and alleged initial stabbing of Whittaker was disproportionate and brutal: he stabbed Hankins more than 50 times (possibly sitting on Hankins while stabbing him), strangled him, broke his neck, and laughed when police officers responded. The evidence was not sufficient as a matter of law to support a finding of serious provocation that would excite such passion in a reasonable person. See *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013) ("[W]ords alone generally are not

sufficient provocation to excite the passion necessary to give rise to voluntary manslaughter." (citation and punctuation omitted)). And the jurors also could have disbelieved Whittaker's assertion that he "came unglued" after he was stabbed, such that he contends he met the legal requirements for voluntary manslaughter. See *Moore v. State,* 314 Ga. 351, 354-355 (877 SE2d 174) (2022) (jury authorized to discredit the defendant's testimony). Moreover, Whittaker's contention that Hankins stated he was a fighter and stabbed Whittaker first would support Whittaker's justification defense (which there was sufficient evidence to disprove) and not that he reacted passionately. See *Dugger v. State*, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015) ("The distinguishing characteristic between [voluntary manslaughter and self-defense] is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself." (citation and punctuation omitted)). Thus, this claim fails.

3. Whittaker contends that the trial court erred by failing to instruct the jury that he had no duty to retreat before using deadly

13

force in self-defense. See OCGA § 16-3-23.1.[5] Because he did not object to the trial court's failure to give this instruction, he must show that the omission amounted to plain error. See OCGA § 17-8-58 (b). To show plain error, Whittaker must establish that "(1) the alleged error was not affirmatively waived, (2) it was obvious beyond reasonable dispute, and (3) it affected the appellant's substantial rights, which ordinarily means showing that it affected the outcome of the trial." *Moore v. State*, 315 Ga. 263, 272-273 (4) (882 SE2d 227) (2022). If a defendant makes that showing, the appellate court has the discretion to remedy the error only if the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. at 273 (4) (citation and punctuation omitted).

Whittaker has failed to show an obvious error here. The no-duty-to-retreat instruction is required only when "the issue of

---

[5] The instruction at issue provided:
> One who is not the aggressor is not required to retreat before being justified in using such force as is necessary for personal defense or in using force that is likely to cause death or great bodily harm if one reasonably believes such force is necessary to prevent death or great bodily injury to oneself or a third person or to prevent the commission of a forcible felony.

Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2020) § 3.10.13.

retreat is raised by the evidence or placed in issue." See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) ("Where self-defense is the sole defense, and the issue of retreat is raised by the evidence or placed in issue, the defense is entitled to a charge on the principles of retreat." (cleaned up)); *Higginbotham v. State*, 287 Ga. 187, 189-190 (4) (695 SE2d 210) (2010) (holding that the no-duty-to-retreat instruction was not warranted when the issue of retreat was not raised by the evidence). But the State never argued that Whittaker should have retreated. Whittaker argues that the State "introduced the 'retreat' concept" by presenting the evidence of his "bullying" of and prior difficulties with Hankins, but he does not explain how this evidence amounted to an argument—or even asked the jury to infer—that Whittaker should have retreated. And that evidence had a much more obvious purpose: it was relevant to show that Whittaker bullied Hankins when the two were drinking, which tended to undermine Whittaker's theory of self-defense. In any event, nothing in the record suggests the State used this evidence to argue that Whittaker should have retreated. Absent any indication

15

in the record that the duty to retreat was placed at issue, the trial court did not commit any obvious error by not giving a no-duty-to-retreat instruction. See *Hoffler v. State*, 292 Ga. 537, 542 (4) (739 SE2d 362) (2013) ("Without evidence to warrant the [no-duty-to-retreat instruction], it cannot be said that the failure to give it was error."); *White*, 291 Ga. at 9 (2) (issue of retreat "not raised by the evidence so as to support the giving of a charge on the subject" where "the defendant testified and was not questioned as to why he did not leave the scene").

Moreover, Whittaker has not shown that the failure to include that charge affected his substantial rights, particularly where the trial court thoroughly instructed the jury on the general principles of self-defense. See *Shaw v. State*, 292 Ga. 871, 873-874 (2) (742 SE2d 707) (2013) (holding that, in light of the court's extensive instructions on self-defense, including circumstances in which force is justified, the reasonableness of a belief that force is necessary, and threats or menaces that may lead to such a reasonable belief, the defendant failed to show that the failure to charge on duty to retreat

16

probably affected the outcome of the trial); *Edmonds v. State*, 275 Ga. 450, 454 (4) (569 SE2d 530) (2002) ("[E]ven assuming that retreat was in issue and [defendant's] sole defense was self-defense, the failure to charge on the lack of duty to retreat would not require reversal because [defendant's] defense of self-defense was fairly presented to the jury," and the trial court fully instructed the jury on the law of justification and self-defense.). So this claim fails.

4. Whittaker argues that his counsel provided ineffective assistance in a number of ways. To prevail on a claim of ineffective assistance, a defendant must show that his counsel's performance was deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687-694 (III) (A)-(B) (104 SCt 2052, 80 LE2d 674) (1984). A claim of ineffective assistance fails if the defendant does not establish either deficient performance or prejudice. See *Lee v. State*, 314 Ga. 724, 727 (1) (879 SE2d 416) (2022).

To establish that counsel's performance was deficient, a defendant "must demonstrate that the lawyer performed his duties

in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Washington v. State*, 313 Ga. 771, 773 (3) (873 SE2d 132) (2022) (citation and punctuation omitted). There is a "strong presumption that counsel performed reasonably," and to overcome that presumption, a defendant must show "that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Id. (citation and punctuation omitted). In particular, "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." Id. (citation and punctuation omitted).

To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Evans v. State*, 315 Ga. 607, 611 (2) (b) (884 SE2d 334) (2023) (citation and punctuation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Lee*, 314 Ga. at 727 (1)

18

(citation and punctuation omitted).

(a) Whittaker contends that his counsel provided ineffective assistance by failing to pursue a motion to suppress the statement he gave at the hospital on the grounds that he was in custody and should have been advised of his rights under *Miranda*.[6]

Trial counsel did not render deficient performance by not pursuing suppression of Whittaker's hospital statement because the motion would have failed. See *Williams v. State*, 315 Ga. 797, 806 (2) (884 SE2d 877) (2023) ("[F]ailing to file a meritless motion is not deficient performance."). "*Miranda* warnings are required only when a person is interviewed by law enforcement while in custody." *Drake v. State*, 296 Ga. 286, 288 (2) (766 SE2d 447) (2014) (citation and punctuation omitted). And a person is only "in custody" for *Miranda* purposes "if he has been formally arrested or his freedom of movement has been restrained to the degree associated with a

---

[6] Before trial, defense counsel moved to exclude any "confessions, admissions or statements" made by Whittaker. But the record does not show an order granting or denying this motion, and the transcripts do not show a *Jackson-Denno* hearing. See *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

formal arrest." Id. at 289 (2) (citation and punctuation omitted). But the record shows that when Whittaker was at the hospital, he was being treated for his injuries, there was no evidence that he was restrained in any way, the investigator asked questions about the incident without isolating him, and there is no indication from the record that he was either told he had to answer those questions or that he could not leave. And Whittaker does not argue that he was restrained or unable to leave. These circumstances do not amount to the degree of restraint associated with a formal arrest. See, e.g., *Jennings v. State*, 282 Ga. 679, 681 (3) (653 SE2d 17) (2007) (concluding that the defendant was not in custody when he "was in a medical, rather than an investigative, setting" and when he was questioned by police officers in the hospital while unable to leave for medical reasons but not isolated by the police).

Even if a motion to suppress Whittaker's statement could have succeeded, trial counsel had a reasonable strategic basis for not seeking to suppress the statement. Counsel testified that he believed that Whittaker's statement at the hospital that "[Hankins] stabbed

me and I came unglued" supported his voluntary manslaughter defense, and that "manslaughter was the only shot we had." Opting not to pursue a motion to suppress, even if it had merit, to ensure that key evidence in support of his defense would be available was a reasonable trial strategy that does not amount to deficient performance. See *Thomas v. State*, 311 Ga. 280, 286 (2) (857 SE2d 223) (2021).

(b) Whittaker contends that his counsel should have requested a jury instruction on mutual combat. "Mutual combat occurs when there is combat between two persons as a result of a sudden quarrel or such circumstances as indicate a purpose, willingness, and intent on the part of both to engage mutually in a fight." *Ramirez v. State*, 307 Ga. 550, 552 (837 SE2d 328) (2019) (citation and punctuation omitted). Whittaker contends that the mutual-combat instruction should have been requested because it was part of his defense theory and strategy to pursue the lesser-included offense of voluntary manslaughter.

The decision to request—or not request—a jury instruction is

a strategic decision and will not constitute deficient performance unless such decision was "so patently unreasonable that no competent attorney would have chosen [it]." *Ramirez*, 307 Ga. at 553 (citation and punctuation omitted). At the motion-for-new-trial hearing, trial counsel testified that "we hoped to be able to show the jury that this was mutual combat," but he did not request the instruction "[b]ecause that defense eroded very quickly once the trial started." He also explained that a mutual-combat defense "would have hurt our ability at the time we did closing argument because I would be making an argument to the jury which was totally ridiculous." This explanation finds support in the record, which shows that Whittaker claimed that Hankins attacked him first—not that the two agreed to fight—and that he killed Hankins in self-defense. "Evidence that the victim attacked the defendant, such that would give rise to justification based on self-defense, is not a basis for an instruction on mutual combat." *Moore v. State*, 307 Ga. 290, 296 (4) (835 SE2d 610) (2019). And even if the evidence might have supported an argument that the fight and resulting death happened

22

as the result of a "sudden quarrel," *Ramirez*, 307 Ga. at 552, declining to advance a relatively weak theory (or, as trial counsel put it, a "totally ridiculous" one) to preserve credibility with the jury was a reasonable strategic decision, and thus not deficient performance.

(c) Whittaker contends that his counsel should have objected to the court's instruction on alcoholism because no evidence supported the charge, which he says generally prejudiced him.

At the request of the State, the trial court included in its charge to the jury Georgia Pattern Jury Instructions § 3.60.10: Voluntary Intoxication, No Excuse for Crime and § 3.60.30 Voluntary Intoxication: Alcoholism, No Defense for Crime. Trial counsel did not object. As to alcoholism, the court instructed:

> Ladies and gentlemen, alcoholism is not involuntary and it's no defense to any criminal act. A person who knows that he suffers from a chronic alcohol drinking problem or knows that he or she suffers from alcoholism may not intentionally and voluntarily induce or bring on a state of intoxication and then be excused from the

commission of a criminal act during the voluntarily induced intoxicated state.

Assuming without deciding that trial counsel performed deficiently, Whittaker has failed to establish prejudice. He offers nothing more than a conclusory argument that the instruction was prejudicial, and in light of the strong evidence of Whittaker's guilt, omitting the instruction would not have given rise to a reasonable probability of a different outcome. See *Mangold v. State*, 253 Ga. App. 369, 372 (2) (559 SE2d 103) (2002) (explaining that "even assuming that the court improperly charged the jury [on alcoholism], we find that this instruction was not prejudicial to Mangold," where undisputed evidence showed that the defendant shot the victim after waving a gun around); *Green v. State*, 190 Ga. App. 130, 131 (2) (378 SE2d 178) (1989) (holding that the alcoholism and voluntary intoxication instructions "were not prejudicial to defendant" in light of the trial court's full charge to the jury).

(d) Whittaker contends that his counsel performed deficiently by failing to request a jury instruction that he had no duty to retreat.

As discussed in Division 3 above, the no-duty-to-retreat instruction was not warranted because retreat was not raised by the evidence or put in issue. See *White*, 291 Ga. at 8-9 (2); *Higginbotham*, 287 Ga. at 189-190 (4). Because the instruction was not supported by the evidence, the failure to request the instruction was not deficient performance. See *Morton v. State*, 306 Ga. 492, 499 (4) (c) (831 SE2d 740) (2019); *Higginbotham*, 287 Ga. at 192 (5) (e) ("Since it was not error to fail to give a charge on no duty to retreat . . . trial counsel's failure to object to the lack of such a charge was not deficient performance.").

(e) Whittaker contends that counsel should have objected to the verdict form. The verdict form was printed with the counts of the indictment and blanks where the jury could write "guilty" or "not guilty." To the right of Counts 1 and 2 for malice murder and felony murder, the trial court handwrote "voluntary manslaughter" followed by a blank. Whittaker contends that the handwritten lines for voluntary manslaughter to the right of the indicted counts violated *Edge v. State*, 261 Ga. 865, 867 (2) (414 SE2d 463) (1992),

by requiring the jury to improperly reach a verdict on the murder count before considering voluntary manslaughter. He argues that no Georgia precedent says that a handwritten blank for a lesser-included offense for consideration only after the jury has reached a verdict on the murder count is appropriate.

Trial counsel was not deficient for failing to object to the verdict form because the verdict form was not improper. "In deciding whether a verdict form accurately presented the law and properly guided the jury, this Court reviews the language of the form along with the trial court's instructions to the jury." *Atkins v. State*, 310 Ga. 246, 252 (3) (850 SE2d 103) (2020). So long as the trial court properly instructs the jury on the lesser offenses and how to fill in the verdict form, there is no error merely because the verdict form does not expressly list the lesser offenses. See id. at 252-253 (3); *Jones v. State*, 303 Ga. 496, 503-504 (V) (813 SE2d 360) (2018). Here, the trial court properly instructed the jury on how to read and fill out the verdict form, including the handwritten portion. The court explained, "[B]efore you would be authorized to return a verdict of

26

guilty of malice murder or felony murder, you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter." The court also noted that, when filling out the verdict form, the jury should "[take] into consideration the lesser included offenses on Counts 1 and 2 for voluntary manslaughter." While Whittaker is right that we have not specifically addressed a verdict form with handwritten lines for lesser offenses to the right of the charged counts, we have upheld verdict forms that did not include any lines for lesser offenses when the trial court properly instructed the jury on the lesser offenses and how to complete the verdict form. See *Jones*, 303 Ga. at 503-504 (V); *Buttram v. State*, 280 Ga. 595, 599 (13) (631 SE2d 642) (2006).

(f) Finally, Whittaker asks the Court to consider the cumulative prejudicial effect of his counsel's errors. But because Whittaker has not established more than one instance of deficiency, we need not address cumulative prejudice. See *Scott v. State*, 309 Ga. 764, 771 (3) (d) (848 SE2d 448) (2020) ("Assessing cumulative prejudice is necessary only when multiple errors have been shown,

27

and [the appellant] has not established even one instance in which trial counsel was deficient.").

5. Finally, Whittaker contends that the trial court erred by failing to enter a separate order vacating his sentence for felony murder after it orally granted his motion to modify the sentence. The State correctly concedes that the felony-murder count should have been recorded as vacated by operation of law rather than merged. See *Manner v. State*, 302 Ga. 877, 890-891 (IV) (808 SE2d 681) (2017). But the incorrect nomenclature does not affect Whittaker's sentence, so there is no sentencing error to correct. See *Washington*, 313 Ga. at 772-773 (2).

*Judgment affirmed. All the Justices concur.*

Decided August 21, 2023.

Murder. Walker Superior Court. Before Judge Thompson.

*Matthew K. Winchester*, for appellant.

*Clayton M. Fuller, District Attorney, Matthew W. Moore, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.