In the Supreme Court of Georgia

Decided:    March 21, 2016

S15A1738.  BRYANT v. THE STATE.

BENHAM, Justice.

Appellant Vonterry Bryant appeals his convictions stemming from the death of Edward Hawkins and the aggravated assault of Allen Cook.[1]  On the night in question, Hawkins, Cook, and Mitchieno Carmichael were at a sports bar and, while there, Hawkins and appellant got into an argument regarding a woman.  Due to the crowd's raucous behavior, the bar's owner closed the bar

[1]The crimes occurred on February 5, 2005.  A Richmond County grand jury returned a true bill of indictment against appellant on June 28, 2005, charging him with malice murder, felony murder, aggravated assault, two counts of possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Appellant was tried before a jury from October 11, 2005 to October 12, 2005.  The jury returned guilty verdicts on all counts in the indictment.  The trial court sentenced appellant to life in prison for malice murder, ten years for aggravated assault to be served concurrently to the life sentence, and five consecutive years each for the three possession charges.  The felony murder count was vacated as a matter of law.  Appellant moved for a new trial on November 15, 2005, and amended the motion through new counsel on August 15, 2006, and on April 30, 2007.  The trial court held hearings on the motion, as amended, on May 2, 2007, and July 10, 2007.  The trial court denied the motion for new trial on October 18, 2007.  On February 6, 2008, appellant filed a pro se motion for an out-of-time appeal.  The trial court appointed appellant several new attorneys between May 2008 and April 2013.  Appellant's present counsel entered an appearance in June 2013 and again moved for an out-of-time appeal which the trial court granted on December 3, 2013.  Appellant filed a notice of appeal on December 20, 2013.  The appeal is docketed to the September 2015 Term of this Court and has been submitted for a decision to be made on the briefs.

and sent all patrons outside. As Cook and Hawkins were leaving the bar, appellant approached them and brandished a gun. Cook and Hawkins ran and appellant gave chase, shooting Hawkins[2] and striking Cook with the gun. One witness testified that appellant left the scene in a white four-door car and another witness testified that, after the shootings, appellant told her he shot Hawkins and that he would have also shot Cook had his gun not jammed. Hawkins died from the gunshot wounds.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. During trial, appellant became aware that Cook and Carmichael had outstanding warrants pending against them. Appellant complained and moved for a mistrial, arguing that the State had violated Brady and Giglio by failing to disclose the warrants.

> The suppression by the prosecution of evidence favorable to an
> accused upon request violates due process where the evidence is

---

[2]The evidence indicates appellant fired eight shots from the gun, hitting Hawkins three times: two shots to the back and one shot to the elbow.

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (83 SCt 1194, 10 LE2d 215) (1963). This includes the suppression of impeachment evidence that may be used to challenge the credibility of a witness. See Giglio v. United States, 405 U.S. 150, 154–155 (92 SCt 763, 31 LE2d 104) (1972). [Cits.] To prevail on a Brady claim, [appellant] was required to show that

(1) the State possessed evidence favorable to his defense; (2) he did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the trial would have been different. [Cits.]

(Punctuation omitted.) Danforth v. Chapman, 297 Ga. 29 (2) (771 SE2d 886) (2015).

Here, appellant cannot establish a Brady/ Giglio violation because he was able to obtain the evidence himself. From the record, it appears that the prosecution was unaware of the warrants because it had not performed criminal background checks of the two witnesses in question.[3] The defense obtained the information on its own accord. Specifically, at trial, defense counsel informed the trial court that he had found out about the warrants from the defense investigator. This assertion by counsel was corroborated during the motion for

---

[3]The record also shows the warrants were issued after the State had provided discovery to appellant about a month before trial.

3

new trial hearing when the defense investigator testified he discovered outstanding warrants against Cook while conducting a jailhouse interview of Cook, who was in jail on an unrelated matter.

Nevertheless, in response to appellant's request for a mistrial and as a way of mitigating the late discovery of the information, the trial court allowed appellant broad leeway to cross-examine Cook and Carmichael, as well as the investigators on the case, about the outstanding warrants. During his cross-examination, appellant was able to establish that neither Cook nor Carmichael had been arrested on the warrants and counsel was able to imply that the two might be receiving such favorable treatment in exchange for their testimony against appellant. Since there was no violation of <u>Brady</u> or <u>Giglio</u>, the trial court did not abuse its discretion when it declined to grant a mistrial. This allegation of error is without merit.

3. Appellant alleges the trial court erred when it allowed the admission of photographic lineups in which witnesses identified appellant as the shooter. The record shows that authorities presented photographic lineups to Cook, Carmicheal, and Karessa Johnson, who were all witnesses for the State. The three were shown two different photographic lineups which were generated by

two different investigators working on the case. While investigator Fanning testified that he only showed witnesses one lineup, the other investigator who also generated a lineup in the case did not testify at trial. Both lineups contained a photograph of appellant, albeit in different positions among the other photographs. All three of these witnesses testified that authorities did not influence them as to which, if any, photograph to select. All three of these witnesses made an in-court identification of appellant as the shooter. At trial, appellant objected to the admission of the photographic lineups on the grounds that they would "unnecessarily highlight the photographs" and unnecessarily highlight the testimony of the victim Cook. The trial court overruled the objections.

Angela Askew, who owned the sports bar and who was a witness for the defense, testified she did not see the shooting in question. However, sometime during the events of that night, she saw a young man come into her bar with a silver gun. Askew testified that she knew appellant and that he was not the person who entered the bar with the silver gun. Askew said authorities showed her two photographic lineups with appellant's picture. She testified that an investigator asked her three times, while "pointing at the photo," whether the

man she saw in the bar with the silver gun was appellant and she responded in the negative, not identifying anyone in the lineups presented to her. The parties did not ask Askew to make an in-court identification of appellant.

On appeal, appellant contends the lineups were tainted and impermissibly suggestive, leading to the misidentification of appellant. We disagree.

> An unduly suggestive procedure is one which leads the witness to the virtually inevitable identification of the defendant as the perpetrator, and is equivalent to the authorities telling the witness, "This is our suspect." Where the identification procedure is not unduly suggestive, it is not necessary to consider whether there was a substantial likelihood of irreparable misidentification.

(Punctuation omitted.) Williams v. State, 290 Ga. 533 (2)(a) (722 SE2d 847) (2012). The lineup procedure in this case was not unduly suggestive.

Each lineup contained six pictures arranged in two rows of three and numbered one through six. Each lineup had an identification number. Each witness was given a preprinted form with instructions on how to make an identification, if any. Using the preprinted form, the three State witnesses wrote their initials under the number that corresponded with the photograph of the person they recognized. The preprinted forms included the signatures of the witness and the investigator, the date and time of the identification, and the

6

lineup identification number. The three State witnesses were unequivocal in their pretrial identifications and they all confirmed that they were not unduly influenced by investigators.

Defense witness Askew likewise was uninfluenced by authorities because she made no identification of appellant, staying true to her statements and testimony that the person who entered her bar with a silver gun was not appellant. Askew did not make any in-court identification of appellant, she did not witness the shooting, and the jury was free to weigh her testimony as it did the other identification witnesses. The photographic lineup procedure here was not suggestive as to the witnesses who made in-court identifications of appellant; and so we need not reach the issue of whether there was an irreparable misidentification at trial.[4] Id. There was no reversible error.

4. In order to prevail on a claim of ineffective assistance of counsel, appellant

---

[4]As for the testimony of Audrey McNair, who was equivocal about her in-court identification of appellant, her equivocation was not evidence that the lineup procedure was suggestive. McNair did not say that anyone influenced her when she was presented with a photographic lineup. In any event, the jury was free to weigh her equivocal in-court identification along with all the other identification evidence in the case.

7

must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644 SE2d 837 (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Appellant cannot meet his burden to show ineffective assistance.

a. First, appellant contends counsel was ineffective for failing to discover outstanding warrants pretrial. This allegation is of no moment because appellant was not prejudiced. When counsel learned of the warrants during trial, he obtained the trial court's permission to extensively cross-examine Cook and Carmichael about the warrants and, through that cross-examination, was able to suggest to the jury that the two witnesses were not arrested on the warrants because they were testifying for the State. Having the information pretrial might have been more convenient for the defense, but appellant cannot show that the outcome of the trial would have been different. Therefore, this allegation of

error cannot be sustained.

b. Appellant contends counsel rendered ineffective assistance when he failed to obtain fifty pages of missing discovery. Appellant has not shown what was in the missing pages or how not having access to these missing pages prejudiced him at trial. This allegation is without merit.

c. Appellant complains counsel did not investigate his alibi witnesses. At the motion for new trial hearing, co-counsel[5] and the defense investigator both testified that the they did in fact investigate appellant's alibi witnesses. The first alibi witness, who was appellant's brother, claimed he did not know appellant and would not talk to the defense investigator. The second alibi witness would have provided unhelpful information. Specifically, appellant told his trial counsel he left the club with the first alibi witness before the shooting occurred; however, the second alibi witness would have testified appellant was present for the shooting but was not the shooter. It was not unreasonable for trial counsel to make a strategic decision declining to put forward an uncooperative alibi witness or an alibi witness who would have provided conflicting testimony. See

[5]The lead counsel was deceased by the time of the motion for new trial hearing.

9

Andrews v. State, 293 Ga. 701 (2) (749 SE2d 734) (2013).  No deficient performance is shown.

Judgment affirmed.  All the Justices concur.