317 Ga. 842
FINAL COPY

S23A0906. BEARD v. THE STATE.

Boggs, Chief Justice.

Appellant James Leon Beard III challenges his convictions for felony murder and a firearm offense arising out of the shooting death of his wife, Angela Bishop. Appellant contends that the trial court committed plain error by failing to give the jury a no duty to retreat instruction and by giving the jury a sequential unanimity instruction on the lesser offense of involuntary manslaughter. Appellant also asserts that he was denied effective assistance of counsel and that the cumulative prejudice from the trial court's errors and his trial counsel's deficiencies entitles him to a new trial. However, as explained below, Appellant has not demonstrated that the failure to instruct on no duty to retreat affected his substantial rights or that the trial court erroneously instructed the jury regarding the lesser offense, so he has not shown plain error. Moreover, Appellant has not shown deficiency and prejudice as

required to establish ineffective assistance of counsel. Finally, the cumulative prejudice from an assumed trial court error and assumed deficiencies by trial counsel does not entitle him to a new trial. Accordingly, we affirm.[1]

1. The evidence at trial showed as follows. Appellant and Bishop began a romantic relationship in 2003 and had four children together. Appellant and Bishop argued often, which led to physical altercations. Appellant had moved to the Atlanta area, but Bishop still lived in South Carolina with her extended family and the children. Two weeks before the shooting, the couple married.

Bishop and the children visited Appellant in Atlanta every few weeks, were going to move there, and had plans to visit Appellant

---

[1] The crimes occurred on March 31, 2017. On January 9, 2018, a DeKalb County grand jury indicted Appellant for felony murder, aggravated assault, and possession of a firearm during the commission of a felony. At a trial from November 1 to 5, 2021, the jury found Appellant guilty of all counts. The trial court sentenced Appellant to serve life in prison for felony murder and a consecutive term of five years in prison for the firearm offense; the aggravated assault count merged. On November 5, 2021, Appellant filed a timely motion for new trial, which he amended on October 18, 2022, and on November 6, 2022. After an evidentiary hearing on November 7, 2022, the trial court denied the motion on March 24, 2023. Appellant filed a timely notice of appeal. The case was docketed in this Court to the August 2023 term and submitted for a decision on the briefs.

on the weekend of the shooting. On the night of March 31, 2017, Bishop and the children arrived at Appellant's apartment complex around midnight. The children waited in the car while Bishop went upstairs to Appellant's second-floor apartment to see if he was awake. Bishop knocked on Appellant's door. Appellant opened the door, Bishop screamed, and Appellant shot her in the center of her chest. Appellant then dragged Bishop down the stairs, threw his gun into the woods behind the apartment building, and put Bishop into the front passenger seat of her car. A bystander called 911, and the police arrived as Appellant was attempting to leave in the car with Bishop and the children. Bishop died from the gunshot wound.

Appellant told the police at the scene that he heard knocking on his door but that when he looked through the peephole, it was blocked. Appellant claimed that when he opened the door, "the gun went off." Later at police headquarters, Appellant told a detective that Bishop "slapped" him when he opened the door.

At trial, family and friends of Bishop testified about her tumultuous relationship with Appellant, including an instance

3

when Bishop said that Appellant choked her until she blacked out and at least two instances when Bishop said that Appellant threatened her with a gun. Michelle Deutch, an expert on domestic violence, testified among other things that displaying a gun can be a form of intimidation that is consistent with an abusive relationship. A GBI firearms investigator testified that Appellant's gun would likely not fire accidentally.

Appellant testified in his own defense, denying that he ever initiated a physical fight with Bishop, threatened her with a gun, choked her, or threatened to kill her. According to Appellant, on the day of the shooting, Bishop texted him to say that she and the children were not coming to visit him that weekend. Appellant said that he was trying to get them to come and that his last text with Bishop was around 4:00 or 5:00 p.m. when his cell phone ran "out of minutes." Appellant testified that between 11:00 p.m. and midnight, he heard someone moving the doorknob to his apartment and what sounded like someone trying to kick in his door. Appellant said that because he was the maintenance man at his apartment complex, he

4

was aware of previous home break-ins and shootings there, and he claimed that he thought that an intruder was trying to break into his apartment. Appellant also said that he looked through the peephole, but the person at the door was covering it, and that he asked through the door who was there three times, but there was no response. Appellant testified that he then grabbed his gun, opened the door, and looked to the right toward the stairs, and that his gun "went off" when someone "struck" him with "a fist" on the left side of his face. Appellant further testified that after shooting Bishop, he dragged her down the stairs because she was too heavy to carry, and that he was preparing to transport her to the hospital in her car when the police arrived. According to Appellant, the detective who interviewed him at police headquarters made comments about his "face being swollen."

On cross-examination, Appellant admitted that his gun had never accidentally gone off before and that when he shot Bishop, he had his finger on the trigger of his gun and "intended to pull the trigger." However, he claimed that he did not know that the person

5

he was shooting was Bishop, whom he said he did not see at all. The distance between his door and the wall to his left where he claimed Bishop stood was only about two to two-and-a-half feet.

2. Appellant contends that the trial court committed plain error by failing to give a no duty to retreat jury instruction. Appellant did not request such an instruction and did not object to the jury charge as given. Thus, as Appellant acknowledges, we review this claim only for plain error. See OCGA § 17-8-58 (b).

> The plain-error standard has four prongs. First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Reese v. State*, 317 Ga. 189, 195 (891 SE2d 835) (2023) (cleaned up). Appellant must satisfy all four prongs to succeed on this claim. See

6

id.

Trial courts have a duty to ascertain the law applicable to each case and to instruct the jury accordingly. See *Gilchrist v. State*, 270 Ga. 287, 288 (508 SE2d 409) (1998). To authorize a jury instruction, there must be at least "slight evidence" supporting the instruction. *Munn v. State*, 313 Ga. 716, 722 (873 SE2d 166) (2022). Appellant asserts that the trial court obviously erred in failing to instruct the jury on OCGA § 16-3-23.1, which says:

> A person who uses threats or force in accordance with Code Section 16-3-21, relating to the use of force in defense of self or others, Code Section 16-3-23, relating to the use of force in defense of a habitation, or Code Section 16-3-24, relating to the use of force in defense of property other than a habitation, has no duty to retreat and has the right to stand his or her ground and use force as provided in said Code sections, including deadly force.

We have explained that such an instruction "is required only when the issue of retreat is raised by the evidence or placed in issue." *Whittaker v. State*, 317 Ga. 127, 133 (891 SE2d 849) (2023) (cleaned up).

7

Assuming without deciding that retreat was raised by the evidence or placed in issue, that the trial court's failure to instruct the jury on no duty to retreat was a clear or obvious error, and that Appellant did not affirmatively waive the error, Appellant has not shown that the lack of a retreat instruction affected his substantial rights. Even when retreat is raised by the evidence or otherwise placed in issue, we have held that reversal is not required for failure to give an instruction on no duty to retreat when the jury is otherwise properly instructed on justification and self-defense. See, e.g., *Ballard v. State*, 297 Ga. 248, 250-251 (773 SE2d 254) (2015); *Edmonds v. State*, 275 Ga. 450, 454 (569 SE2d 530) (2002). Although some of us question the correctness of that case law, Appellant has not argued that these cases were wrongly decided, but more importantly, he has not demonstrated that the lack of an additional specific instruction on no duty to retreat affected the outcome of his trial. See *Whittaker*, 317 Ga. at 134. See also *Shaw v. State*, 292 Ga. 871, 871, 873-874 (742 SE2d 707) (2013) (affirming conviction because the defendant "had a fair opportunity to present evidence of

8

his claim of self-defense through his own testimony at trial" and because "[t]he charges given . . . fairly informed the jury as to the law of self-defense").

3. Appellant also claims that the trial court committed plain error by giving a sequential unanimity jury instruction on involuntary manslaughter as a lesser offense of murder. However, Appellant did not object to the jury charge as given. Thus, as Appellant acknowledges, he must show plain error to obtain a reversal on this ground. See OCGA § 17-8-58 (b).

We have held that "when the evidence presented in a criminal trial warrants a jury instruction on a lesser-included offense, the trial court errs if it instructs the jury that it may consider the lesser offense only if it first unanimously finds the defendant not guilty of the indicted greater offense." *Stewart v. State*, 311 Ga. 471, 473-474 (858 SE2d 456) (2021). However, "an instruction that tells the jury that it should consider possible verdicts in a particular sequence is not an improper sequential jury instruction as long as the instruction does not insist on unanimity as to a not-guilty verdict on

the greater offense before consideration of the lesser offense." Id. at 474 (cleaned up). In deciding whether the trial court gave an improper sequential unanimity instruction, we treat a preprinted verdict form as part of the jury instructions. See *Cheddersingh v. State*, 290 Ga. 680, 682 (724 SE2d 366) (2012). Thus, what trial courts must avoid is "any instruction, including on a verdict form, that directs the jury to consider the lesser offense only if it first unanimously finds the defendant not guilty of (reaches a verdict of not guilty on) the indicted greater offense." *Stewart*, 311 Ga. at 475.

After instructing the jury on the definitions of felony murder and involuntary manslaughter, the trial court gave the following instruction:

> If you do not believe beyond a reasonable doubt that the defendant is guilty of felony murder, but you do believe beyond a reasonable doubt that the defendant is guilty of involuntary manslaughter, then you would be authorized to find the defendant guilty of involuntary manslaughter. And the form of your verdict in that event would be we, the jury, find the defendant guilty of involuntary manslaughter.

Toward the end of the jury charge, the trial court instructed,

10

"Whatever your verdict is, it must be unanimous, that is agreed to by all of you who are deliberating. The verdict will be in writing, and it must be signed by your foreperson, dated, and returned to be published in open court." The trial court further instructed the jury on how to fill out the verdict form: "[Y]ou will see on the verdict form under Count 1, felony murder, then you will see not guilty or guilty. You need to make a selection there, okay. You will also see involuntary manslaughter. You will need to make a selection; not guilty or guilty." The preprinted verdict form listed the options with respect to count one as follows:

___ Not Guilty
___ Guilty of Felony Murder
___ Not Guilty of Felony Murder but Guilty of Involuntary Manslaughter

There was no error, much less clear or obvious error, in these instructions and the verdict form. The instructions and verdict form did not explicitly require the jury to find Appellant not guilty of felony murder before considering involuntary manslaughter. Compare *Kunselman v. State*, 232 Ga. App. 323, 324-325 (501 SE2d

11

834) (1998) (holding that the trial court erred in instructing the jury, "[I]f you find the defendant not guilty of burglary, you would *then and only then* be authorized to consider the lesser included offense of criminal trespass on that count." (emphasis supplied)). The trial court's instruction that if the jury did not believe beyond a reasonable doubt that Appellant was guilty of felony murder, but did believe beyond a reasonable doubt that he was guilty of involuntary manslaughter, then it would be authorized to find him guilty of that crime — along with the direction to make a selection as to each — was not an improper sequential unanimity instruction. See *Reese*, 317 Ga. at 203-206 (holding that trial counsel did not perform deficiently in failing to object when the trial court instructed the jury to "consider the felony murder first. If you don't find that, then you would consider involuntary manslaughter."); *Camphor v. State*, 272 Ga. 408, 414-415 (529 SE2d 121) (2000) (no reversible error where the trial court instructed the jury, "Should you find the defendant not guilty of the crime of burglary, you would be authorized to consider under the evidence whether or not he did . . . commit the

12

lesser offense of criminal trespass."). See also *Jackson v. State*, 267 Ga. 130, 133 (475 SE2d 637) (1996) ("We know of no authority which requires that charges on a lesser included offense . . . precede the charge on the greater offense."). The inclusion in the jury charge of the pattern jury instruction that any verdict by the jury must be unanimous did not transform the jury instructions and verdict form into an improper sequential unanimity instruction. See *Reese*, 317 Ga. at 203-206; *Stewart*, 311 Ga. at 472-473. Accordingly, Appellant has failed to demonstrate plain error.

4. Appellant claims that he was denied effective assistance of counsel in six ways. We disagree.

To establish a claim of ineffective assistance of counsel, a defendant must prove deficient performance by his counsel and resulting prejudice. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To prove deficient performance, a defendant must show that his attorney performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688. To

overcome the "strong presumption" that counsel performed reasonably, a defendant must show that no reasonable attorney would have done what his attorney did or would have failed to do what his attorney did not do. *Bonner v. State*, 314 Ga. 472, 474 (877 SE2d 588) (2022). "In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Wells v. State*, 295 Ga. 161, 164 (758 SE2d 598) (2014) (cleaned up). See also *Cannon v. State*, 302 Ga. 327, 330 (806 SE2d 584) (2017) ("A strategic decision about what jury instruction to request will be deemed deficient performance only if it is patently unreasonable."). The defendant must also prove prejudice: that but for his counsel's unprofessional errors, a "reasonable probability" exists that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id.

(a) Appellant points first to his trial counsel's alleged failure to

conduct a reasonable investigation into, and to subpoena to testify at his trial, a potential defense witness. At the motion for new trial hearing, Appellant presented the testimony of his cousin, Christopher Woodberry. According to Woodberry, Appellant called him the day before the shooting, told him that Bishop decided not to visit for the weekend, and invited him to come over the next day. Woodberry said that on the night of March 31, 2017, he awoke at Appellant's apartment to "violent banging" on the front door that lasted 12 to 15 minutes. Woodberry claimed that when Appellant opened the door, "[s]omeone came through and slapped him." Woodberry testified that after the shooting, he called 911 and then fled the scene. Woodberry admitted that Appellant's trial counsel had contacted him before the trial and that he refused to speak with Appellant's counsel.

Appellant's trial counsel testified at the motion for new trial hearing that he made repeated attempts to contact Woodberry before the trial; that when he eventually spoke to Woodberry, Woodberry said that he did not want to get involved at Appellant's

trial; and that Woodberry told him, "[Y]ou don't need me to testify; I couldn't help you." Counsel further testified that he knew Woodberry and did not think that he would be a credible witness, and that subpoenaing him and forcing him to testify "would have been a catastrophe" because he did not know what Woodberry would say and could not have erased Woodberry's testimony from the jurors' minds once he had elicited it. Counsel also testified that he had an "in-depth conversation[ ]" with Appellant about Woodberry and that Appellant ultimately agreed with counsel that Woodberry should not be called to testify at Appellant's trial. In its order denying Appellant's new trial motion, the trial court found that Woodberry was not a credible witness, credited trial counsel's testimony, and noted that Woodberry was a convicted felon.

Appellant's claim that his trial counsel failed to reasonably investigate Woodberry as a potential defense witness was rejected by the trial court at the motion for new trial hearing. See *Kimbro v. State*, 317 Ga. 442, 453 (893 SE2d 678) (2023) ("In reviewing a claim of ineffective assistance of counsel, we accept the trial court's factual

16

findings and credibility determinations unless clearly erroneous . . . ." (cleaned up)). Moreover, Appellant has failed to show that trial counsel's decision not to call Woodberry as a defense witness was objectively unreasonable. See *Atkinson v. State*, 301 Ga. 518, 526-527 (801 SE2d 833) (2017) (holding that it was objectively reasonable for counsel not to call a witness where counsel believed that the witness might not be credible); *Bryant v. State*, 298 Ga. 703, 708 (784 SE2d 412) (2016) (holding that trial counsel made a reasonable strategic decision not to call an "uncooperative alibi witness" who refused to speak with counsel's investigator); *Fortson v. State*, 280 Ga. 435, 437 (629 SE2d 798) (2006) (holding that trial counsel was not deficient in not calling a witness who was "not credible" and would have offered "counter-productive" testimony). Thus, Appellant has not shown deficient performance.

(b) Appellant points next to his trial counsel's failure to object to Deutch's expert testimony on domestic violence as not within the proper scope of expert opinion and irrelevant. Specifically, Appellant asserts that Deutch's testimony consisted of basic facts that were

not beyond the ken of the average layperson and of "irrelevant" examples that did not relate to the evidence at Appellant's trial. During her testimony, Deutch explained that domestic violence theorists hypothesize that an abuser's goal is power and control and that an abuser directs his or her anger and violence toward his or her partner to control that person. She testified that this theory of domestic violence, called power and control dynamics, grew out of the Duluth Project in the 1980s and is widely accepted in her field. Applying that analytical framework, Deutch referred to the "power and control wheel," a diagram that illustrates behaviors that are characteristic of an abusive relationship. She stated that experts look for the presence of eight behaviors to identify relationships that are abusive. For example, Deutch asserted that the display of a weapon can constitute the abusive behavior of intimidation. Deutch clarified that not all the behaviors she identified were present in all abusive relationships.

We assume without deciding that trial counsel performed deficiently in failing to object to Deutch's testimony on the two

18

grounds that Beard now raises.[2] However, he has failed to show the required prejudice. The jurors had already heard that Appellant choked Bishop and threatened her with a gun, so Deutch's testimony was largely duplicative and cumulative. Because the evidence was cumulative, any deficiency in failing to object to the evidence did not amount to *Strickland* prejudice. See *Eubanks v. State*, 317 Ga. 563, 583 (894 SE2d 27) (2023) ("Admitting inadmissible evidence can be harmless if substantial, cumulative, legally admissible evidence of the same fact is introduced." (cleaned up)).

(c) Appellant also points to his trial counsel's failure to request a no duty to retreat instruction. However, as explained above, Appellant has not shown that the lack of such an instruction affected

---

[2] The current statute governing the admissibility of expert testimony in criminal cases is OCGA § 24-7-702 because the General Assembly repealed former OCGA § 24-7-707 (2013). See Ga. L. 2022, p. 201, §§ 1-2. And as we have explained,

> although Georgia's new Evidence Code is applicable to the trial of this case, the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under [former OCGA § 24-7-707 (2013)] are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67). Accordingly, it is appropriate to rely . . . on decisions under the old Code.

*Robinson v. State*, 309 Ga. 729, 735 n.2 (848 SE2d 441) (2020) (cleaned up).

his substantial rights. Accordingly, he also has failed to show *Strickland* prejudice from his trial counsel's failure to request a no duty to retreat instruction. See *Parker v. State*, 305 Ga. 136, 140 n.8 (823 SE2d 313) (2019) ("The test for harm under plain error review is equivalent to the test in ineffective assistance of counsel cases for whether an attorney's deficient performance has resulted in prejudice of constitutional proportions." (cleaned up)).

(d) Appellant further points to his trial counsel's failure to object to the allegedly improper sequential unanimity jury instruction on involuntary manslaughter. As discussed above, however, the jury instructions and preprinted verdict form did not constitute an improper sequential unanimity jury instruction. Thus, an objection on this ground would have been meritless, and Appellant has failed to show deficient performance. See *Mann v. State*, 297 Ga. 107, 111 (772 SE2d 665) (2015) (holding that trial counsel's failure to object to an instruction was not deficient performance because "any objection to the instruction would have been meritless, and the failure to make a meritless objection does

not constitute ineffective assistance of counsel").

(e) Appellant also points to his trial counsel's decision to withdraw his request for a jury instruction on defense of habitation. However, trial counsel testified at the motion for new trial hearing that based on his decades of experience as a criminal defense attorney, juries did not favor justification defenses based on a defense of habitation, and Appellant points to little evidence supporting that defense. We cannot say that trial counsel's strategic decision to withdraw his request for a defense of habitation jury instruction and instead to pursue a straightforward justification defense based on self-defense was patently unreasonable. Thus, Appellant has failed to show deficient performance. See *Hendrix v. State*, 298 Ga. 60, 63-64 (779 SE2d 322) (2015) (holding that experienced trial counsel's strategic decision to pursue a misidentification defense over a claim of self-defense that was contradicted by the evidence was not patently unreasonable); *Patel v. State*, 279 Ga. 750, 753 (620 SE2d 343) (2005) (holding that "experienced trial counsel" made a reasonable strategic decision not

21

to request a defense of habitation instruction "based on counsel's assessment of the jury and the evidence"), disapproved of on other grounds by *Gibbs v. State*, 303 Ga. 681, 683-684 (813 SE2d 393) (2018).

(f) Appellant also points to his trial counsel's successful request for a jury instruction on an inapplicable subsection of the involuntary manslaughter statute and his failure to request a jury instruction on the applicable subsection. Trial counsel acknowledged at the motion for new trial hearing that he meant to request a jury instruction on subsection (a) of the involuntary manslaughter statute but instead mistakenly requested an instruction on subsection (b), which the trial court gave.[3]

---

[3] The involuntary manslaughter statute, OCGA § 16-5-3, says:

(a) A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. A person who commits the offense of involuntary manslaughter in the commission of an unlawful act, upon conviction thereof, shall be punished by imprisonment for not less than one year nor more than ten years.

(b) A person commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful

We assume without deciding that counsel was professionally deficient in requesting a jury instruction on the wrong subsection of the involuntary manslaughter statute. However, Appellant has not demonstrated the required prejudice. As the trial court found in its order denying the new trial motion, the evidence at trial showed either that Appellant intentionally fired his gun in self-defense or that the gun went off accidentally. There was little to no evidence that Appellant shot Bishop by "consciously disregarding a substantial and unjustifiable risk" that an act or omission by him would cause bodily harm with "the disregard constitut[ing] a gross deviation from the standard of care which a reasonable person would exercise in the situation," as required for involuntary manslaughter based on the misdemeanor crime of reckless conduct. OCGA § 16-5-60. See *Anderson v. State*, 302 Ga. 74, 84 (805 SE2d 47) (2017)

---

manner when he causes the death of another human being without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm. A person who commits the offense of involuntary manslaughter in the commission of a lawful act in an unlawful manner, upon conviction thereof, shall be punished as for a misdemeanor.

23

(noting that "involuntary manslaughter [under OCGA § 16-5-3 (a)] is inconsistent with both the defense of self-defense and the defense of accident").

By contrast, the evidence of Appellant's guilt of felony murder based on aggravated assault was strong. There was no physical evidence that Bishop was trying to break into the apartment at the time of the shooting or that she was armed; it was highly unlikely that Appellant did not see Bishop as she stood in the two- to two-and-a-half-foot space between the doorway and the wall to the left of the doorway; Appellant dragged Bishop down the stairs after he shot her; Appellant attempted to hide the gun before the police arrived; no officer testified that Appellant had any apparent injuries; and Appellant admitted that he fatally shot Bishop. See *Fuller v. State*, 278 Ga. 812, 813-814 (607 SE2d 581) (2005) (holding that the defendant failed to show *Strickland* prejudice from trial counsel's inconsistent requests to instruct the jury on OCGA § 16-5-3 (b) and self-defense "given that the victim was unarmed and given the strength of the evidence that [the defendant] intentionally

24

stabbed the victim for his failure to have her money"). Thus, Appellant has failed to show prejudice from the assumed deficiency.

5. Finally, citing *State v. Lane*, 308 Ga. 10, 14 (838 SE2d 808) (2020), Appellant argues that he is entitled to a new trial due to the cumulative prejudice from the trial court's errors and his trial counsel's deficiencies. "To establish cumulative error, [the defendant] must show that (1) at least two errors were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [the defendant] a fundamentally fair trial." *Jackson v. State*, 317 Ga. 95, 107 (891 SE2d 866) (2023).

The prejudice we must consider cumulatively here stems from: (1) assumed trial court error in failing to instruct the jury on no duty to retreat; (2) assumed trial counsel deficiency in failing to request a jury instruction on no duty to retreat; (3) assumed trial counsel deficiency in failing to object to Deutch's testimony as not beyond the ken of the average layperson; and (4) assumed trial counsel deficiency in failing to request an instruction on the applicable

25

subsection of the involuntary manslaughter statute. The prejudice from the first two assumed errors is identical: the result of both was that the jury did not receive a no duty to retreat instruction. See *Priester v. State*, 317 Ga. 477, 492 n.20 (893 SE2d 751) (2023). And that prejudice, combined with the prejudice from other assumed deficiencies, does not outweigh the strength of the admissible evidence showing Appellant's guilt of felony murder based on aggravated assault. Accordingly, we conclude that the trial court error and deficiencies by counsel assumed above did not deprive Appellant of a fundamentally fair trial.

*Judgment affirmed. All the Justices concur.*

Decided December 19, 2023.

Murder. DeKalb Superior Court. Before Judge Jackson.

*Matthew K. Winchester; McLendon Law Firm, Jason M. McLendon*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Lenny I. Krick, Andrew M. Healy, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Chelsea S. Harvey, Assistant Attorney General*, for appellee.